**In re George Robert MATTESON, Social Security No. 478–28–6887, Debtor.**

**Bankruptcy No. 85 B 07139 C.**

United States Bankruptcy Court, D. Colorado.

March 24, 1986.

Theodore Smith, Boulder, Colo., for debtor George Matteson.

Kurt Lewis, Denver, Colo., for Intrawest Bank.

## ORDER

PATRICIA ANN CLARK, Bankruptcy Judge.

Intrawest Bank of Aurora seeks a determination that debtor George Robert Matteson's vested, undistributed interest in a pension plan is property of the estate which is not subject to exclusion nor exemption. Matteson contends that the pension plan is excluded from property of the estate under 11 U.S.C. § 541(c)(2).

The subject plan, entitled Pension Plan for Agents of Central Life Assurance Company, is a benefit provided to this 56 year old debtor by his employer, Central Life. The plan expressly provides that the interest of a participating employee is inalienable and unleviable. No withdrawals are permitted, except upon the employee's death, termination, disability or retirement or upon termination of the plan itself. The plan is an ERISA plan qualified for tax purposes under 26 U.S.C. § 401(a) (1978 and Supp.1984). The plan provides for mandatory employer contributions along with voluntary employee contributions. As of the filing of the bankruptcy petition, Matteson's vested interest in the plan was approximately $70,000.

Section 541 of the Bankruptcy Code reaches broadly to bring most assets of the debtor into the bankruptcy estate. *U.S. v. Whiting Pools,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983). One exception to its sweeping scope is Section 541(c)(2), which states:

> (2) A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The key term in Section 541(c)(2) is "applicable nonbankruptcy law." Authorities have disagreed about its meaning. Some courts have interpreted the reference as broadly as it reads on its face, noting that resort to legislative history is not necessary when a statute's wording is clear. *In re Pruitt,* 30 B.R. 330 (Bankr.Colo.1983) and *In re Threewitt,* 24 B.R. 927 (D.Kan. 1982). These courts would tend to exclude from the estate all plans which would be protected from creditors in an ordinary state court action in which nonbankruptcy law would apply. In contrast, a substantial number of bankruptcy courts have relied on the section's legislative history to conclude that only traditional state law spendthrift trusts are referred to by the term "applicable nonbankruptcy law." *See, e.g., In re Miller,* 33 B.R. 549 (Bankr.Minn.1983) and *In re DiPiazza,* 29 B.R. 916 (Bankr.N.D.Ill.1983). Thus, to be excludable under this more restrictive interpretation, a pension plan trust must be analogous to a spendthrift trust as defined by state law.

This split among the bankruptcy courts amplifies the significance of recent decisions of the various Circuit Courts of Appeals regarding this issue. The appellate courts have clearly resolved the question in favor of a restrictive interpretation of Section 541(c)(2), holding that "applicable nonbankruptcy law" refers *only* to state

spendthrift law. *See, In re Goff,* 706 F.2d 574 (5th Cir.1983), *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985) and *In re Daniel,* 771 F.2d 1352 (9th Cir.1985), *cert. applied for. Compare, In re Graham,* 726 F.2d 1268 (8th Cir.1984) (where the court concluded, by inference, that Congress would not have provided an exemption for pension funds under Section 522 if they could be excluded from the estate as part of a spendthrift trust under Section 541(c)(2)).

In light of the clear directives from the recent appellate decisions, this Court has reconsidered its earlier examination of this issue as set forth in *In re Pruitt,* 30 B.R. 330 (Bankr.Colo.1983). Based on this reconsideration, this Court has determined that Congress did not intend to prevent the bankruptcy trustee from reaching funds of the debtor merely because such funds were held in a trust that qualified for favorable tax treatment. Section 541(c)(2) was intended to apply only to a spendthrift trust which is recognized and enforceable under state law. *See* H.R. Rep. No. 595, 95th Cong., 2d Sess. 369, *reprinted in* 1978 U.S.Code & Ad.News 5963, 6325.

As a result, the relevant inquiry becomes whether the subject pension plan is enforceable under state law as a spendthrift trust. Spendthrift trusts are valid in Colorado. *See, e.g., Brasser v. Hutchison,* 37 Colo.App. 528, 549 P.2d 801 (1976). Generally, a spendthrift trust is one which, by the terms of the trust, restrains the voluntary or involuntary transfer of the beneficiary's interest. *Restatement (Second) of Trust,* § 152(2) (1959). Under the common law of trust, a spendthrift trust which names the settlor as beneficiary is invalid. G. Bogert, *Law of Trusts and Trustees,* rev. 2d ed. § 223, pp. 438–439 (1979). Underlying these requirements is the issue of the extent of dominion and control a beneficiary possesses over the trust corpus. *In re Berndt,* 34 B.R. 515 (Bankr.N.D.Ind.1983). These restrictions ensure that although an individual can set up a trust to provide for the welfare of another, he cannot control his assets to defraud his creditors.

The Pension Plan for Agents of Central Life contains a provision which bars the voluntary or involuntary alienation of Matteson's right to receive income. Further, although Matteson is a beneficiary he is not the settlor of his employer's plan. The determinative inquiry, then, is the extent of dominion and control Matteson possesses over the corpus. An examination of the withdrawal provisions of the plan, as stipulated to by the parties, reveals that Matteson cannot withdraw funds, except upon his death, termination, or disability, or upon the termination of the plan. Although Matteson represented to Intrawest that he had access to the money in the plan, the evidence indicates that no disbursement could occur before August, 1986. Also, Matteson does not participate in managing the pension plan program. He has no dominion over his benefits from this employer-created-and-controlled plan. As a result, the Court finds that the Central Life Plan constitutes a spendthrift trust and as such is excludable under Section 541(c)(2) from property of the estate. This conclusion eliminates the necessity of considering any Section 522(b)(2)(A) exemption claim against the funds at issue.

ORDERED that Intrawest Bank of Aurora's objection is denied.

FURTHER ORDERED that the parties shall have 10 days from the date this Order becomes final to file a written request for the withdrawal of all exhibits received in evidence, after which time the exhibits will be destroyed by the Clerk without further order of the Court.