**In re Paul Joseph TONER, Debtor.**

**Bankruptcy No. 86 B.**

United States Bankruptcy Court,
D. Colorado.

April 7, 1989.

H. Christopher Clark, Trustee.

Thomas F. Quinn, Denver, Colo., for debtor.

Charles Beach, Denver, Colo., for Gordon Poulson.

## MEMORANDUM OPINION AND ORDER

ROLAND J. BRUMBAUGH, Bankruptcy Judge.

THIS MATTER comes before the court upon an Objection to Claimed Exemptions filed on behalf of creditor Gordon Poulsen and the trustee, H. Christopher Clark.

The Debtor, both before and after his bankruptcy filing, was president, one of two directors, and 45% owner of Allied Brokers, Inc. ("Allied"), his primary employer. The other two owners of Allied were Donald Pitner (also a director and 45% owner) and Pete Howley (10%). Allied maintained both pension and profit sharing plans for its employees, which plans were qualified under the Employee Retirement Income Security Act of 1974 ("ERISA"). The plans were administered by Donald Pitner, though Merrill, Lynch, Pierce, Fenner and Smith served as the trustee of the plans. At the time of Debtor's bankruptcy petition, he had $78,302.00 in the pension plan and $169,711.74 in the profit sharing plan; a total of $248,113.74.

The plans provided that the plan participant could elect to receive a premature lump sum distribution of his or her interest in the plans

a) at any time later than 10 years after joining the plan,

b) upon terminating employment with Allied,

c) upon termination of the plan by Allied, or

d) at any other time with the consent of the trustee.

Additionally, Allied, as the settlor of the plans, could amend the plans at any time. At the hearing held on January 13, 1989, Debtor testified that prior to his bankruptcy petition, he had withdrawn approximately $90,000.00 from these plans.

There are two issues to be decided by this court. First, are the plans property of the estate? If so, the second issue to be determined is whether the plans are exempt property.

## I. PROPERTY OF THE ESTATE

█ Debtor contends that, pursuant to 11 U.S.C. Section 541(c)(2), the plans are not property of the estate. Section 541(c)(2) states that

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The Debtor asserts that, "applicable non-bankruptcy law" includes the federal laws under ERISA. In order to qualify under ERISA, "Each plan shall provide that benefits provided under the plan may not be assigned or alienated," 29 U.S.C. Section 1056(d)(1). It is this section of ERISA that requires a restriction on the transfer of a beneficial interest of the debtor and, the Debtor claims, is enforceable under the Bankruptcy Code. Assuming this to be true, Section 541(c)(2) would indicate that all ERISA qualified plans are not property of the bankruptcy estate.

However, the court in this district has determined the contrary. Three Circuit Courts of Appeal have addressed this issue, and after a very thorough analysis of the legislative history of Section 541(c)(2) and Section 522, these courts determined that "applicable nonbankruptcy law" refers *only* to state spendthrift law. *In re Goff*, 706 F.2d 574 (5th Cir.1983); *In re Lichstrahl*, 750 F.2d 1488 (11th Cir.1985); *In re Daniel*, 771 F.2d 1352 (9th Cir.1985). In light of these appellate decisions, the court in *In re Matteson*, 58 B.R. 909 (Bkrtcy.D. Colo.1986) reconsidered this issue, which it had addressed three years earlier in *In re Pruitt*, 30 B.R. 330 (Bkrtcy.Colo.1983). The *Matteson* court determined that "Section 541(c)(2) was intended to apply only to a spendthrift trust which is recognized and enforceable under state law." The effect of this determination is that an ERISA qualified pension or profit sharing plan will be property of the estate *unless* it can be shown that the plans are spendthrift trusts under Colorado law.

The *Matteson* court, after determining that spendthrift trusts were valid in Colorado, went on to set out some of the characteristics of such trusts:

1) A spendthrift trust restrains the voluntary or involuntary transfer of the beneficiary's interest.

2) A spendthrift trust which names the settlor as beneficiary is invalid.

3) Underlying these requirements is the amount of dominion and control a beneficiary can exercise over the trust corpus.

In the case at bar the pension and profit sharing plans do contain some restrictions as to the distribution of the plan benefits; however, neither the Debtor, Allied, nor the trustee of the plans seem to have abided by these restrictions. The plans require that a formal "election" be made if premature distributions are to be made. There was no such election made. The Debtor merely told the plan administrator, Mr. Pitner, that he wanted the funds and they were paid. Nor was any documentation apparently required by the trustee of the plans, Merrill Lynch. The plans provide for only a single lump sum distribution—in this case there were at least two. There was no indication that the consent of the trustee was ever obtained.

The Debtor is technically not the settlor of the plans—Allied was. But the Debtor was 45% owner of Allied and was one of only two directors of Allied. Allied was under the total control of two of the beneficiaries of the pension and profit sharing plans. If the settlor of a trust is under the total control of some of the beneficiaries, the beneficiaries can in reality control distribution of the trust assets. Such a trust may look like a spendthrift trust, but, as in the case at bar, it doesn't function like one.

The amount of control that the Debtor exercised over the trust corpus was considerable. His testimony at the hearing indicated that both he and Mr. Pitner withdrew funds from the plans. They discussed these withdrawals with each other, though it was not made clear whether any consent was actually required. Merrill Lynch was the trustee of the plans, but both Debtor and Mr. Pitner served as "advisors" to the trustee. The plans could be amended at any time by Allied, and being a 45% owner of Allied, Debtor would have significant influence over any modifications of the plans.

Because of the circumstances of ownership of the settlor of the plans, the manner in which they were administered and the control Debtor had over such administration, this court finds that the Allied pension and profit sharing plans did not qualify as spendthrift trusts under Colorado law.

Section 541(c)(2) applies only to spendthrift trusts which are recognizable under state law, and thus does not apply to these plans. Therefore, this court finds that the Allied pension and profit sharing plans are property of the bankruptcy estate.

## II. EXEMPT PROPERTY

Having found that the pension and profit sharing plans are property of the estate, the second area of inquiry is to determine whether the plans are exempt property. The Debtor asserts two theories of exemption. One under 11 U.S.C. Section 522(b)(2)(A) and one under C.R.S. 13–54–104.

*Exempt Property under 11 U.S.C. Section 522(b)(2)(A)*

Section 522(b)(2)(A) provides in relevant part:

(b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, in the alternative, paragraph (2) of this subsection.... Such property is—

(2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition ...

It is the Debtor's position that, since the pension and profit sharing plans contain the anti-assignment clause as required by ERISA, then the plans are automatically "exempt under Federal law."

█ Of the cases dealing with this issue, a few have agreed with the Debtor's position. *In re Hinshaw,* 23 B.R. 233 (Bkrtcy. D.Kan.1982). However, the weight of authority is to the contrary. *Matter of Goff,* 706 F.2d 574 (5th Cir.1983); *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985); *In re Graham,* 726 F.2d 1268 (8th Cir.1984); *In re Daniel,* 771 F.2d 1352 (9th Cir.1985).

The House and Senate Reports on Section 522(b)(2)(A) contain a non-exclusive list of property that can be exempted under federal laws:

Foreign Service Retirement and Disability payments.

Social security payments.

Injury or death compensation payments from war risk hazards.

Wages of fishermen, seamen, and apprentices.

Civil service retirement benefits.

Longshoremen's and Harbor Workers' Compensation Act death and disability benefits.

Railroad Retirement Act annuities and pensions.

Veterans benefits.

Special pensions paid to winners of the Congressional Medal of Honor.

Federal homestead lands on debts contracted before issuance of the patent.

S.Rep. No. 95–989, 95th Cong., 2d Sess. 75 (1978); H.R.Rep. No. 95–595, 95th Cong., 1st Sess. 360 (1977), U.S.Code Cong. & Admin.News, 5787, 5861, 6316.

*Goff* and its progeny have found the listed properties were all of a peculiarly federal nature. The *Graham* court stated:

While the above list was not meant to be exclusive, we find the failure of Congress to include ERISA plan benefits probative of Congressional intent that ERISA was not a "Federal law" upon which a Section 522(b)(2)(A) exemption could be based. *See In re Goff,* 706 F.2d at 585. Furthermore, although the provisions of some of the statutes on the list creating a federal exemption are similar to the anti-alienation provisions of ERISA, there is a conceptual distinction between the property exempted by the listed laws and the property covered by ERISA. The pensions, wages, benefits and payments included in the illustrative list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems. We thus conclude, as did the Fifth Circuit [*In re Goff,* 706 F.2d at 586] that Congress did not intend to include ERISA plans within the other "Federal law" exemption of Section 522.

726 F.2d at 1274. Similarly, the Eleventh Circuit reasoned in *Lichstrahl:*

Congress knew of the much-debated and comprehensive statute when it issued the House and Senate reports on Section 522(b)(2)(A) in 1977 and 1978, and yet it did not include ERISA in those reports. *Matter of Goff,* 706 F.2d at 585; *see also In re Graham,* 726 F.2d 1268, 1274 (8th Cir.1984). Congress, however, did refer to ERISA in other sections of the Bankruptcy Code. Of particular importance is ERISA's inclusion within the alternative federal exemptions listed in Section 522(d). The failure to mention ERISA in connection with Section 522(b) was intentional. *Matter of Goff,* 706 F.2d at 585.

It is Debtor's contention that, contrary to the assertions in *Goff* and its progeny, ERISA is not referred to in Section 522(d). Section 522(d)(10)(E) exempts

a payment under a stock bonus, pension, profit sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—

(iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954.

Though ERISA is not named *per se* in this language, ERISA qualified pension and profit sharing plans most certainly are included under the language of "pension, profit sharing, annuity, or similar plan."

The *Lichstrahl* court goes on to say:

Furthermore, excluding ERISA–qualified pension plans from the list of property exempted under federal law is consistent with an important distinction between exempted property and property covered by ERISA. Despite the similarity between the anti-alienation provisions of ERISA and some of the listed statutes, the "pensions, wages, benefits and payments included in the … list are all peculiarly federal in nature, created by federal law or related to industries traditionally protected by the federal government. In sharp contrast, ERISA regulates private employer pension systems." *In re Graham,* 726 F.2d at 1274. It is

this "peculiarly federal nature" shared by the cited statutes that identifies and determines which federal statutes are to be included within the "other federal law" exemption of Section 522 and which, like ERISA, are to be excluded. *See Matter of Goff,* 706 F.2d at 586. The *Goff* court found distinctions in the type of restrictions on alienation under ERISA and those found in the listed statutes:

Further, we stress that ERISA's anti-alienation provisions are different in kind from those contained in the statutes listed in the Code's legislative history. We do not see across-the-board differences in the explicitness of the restraints against alienation in the listed statutes and in ERISA. But we do find that the contingent nature of ERISA's restraints on alienation differs markedly from the absolute prohibitions contained in the listed statutes. ERISA merely provides that *as a condition of obtaining qualified status*—with its attendant tax and other benefits—a pension plan must preclude alienation or assignment of its benefits. It does not prohibit pension funds from permitting alienation or assignment; rather, while it encourages and favors qualified plans, it envisions that "disqualified" plans may be formed which are still subject to ERISA's regulatory scheme but which do not restrict alienation or assignment. By contrast, the listed statutes which establish or guarantee certain benefits *directly preclude all* such benefits from alienation or assignment.

As additional reenforcement of our view of the Section 522 exemptions, we find that "property" covered by ERISA differs in nature from that covered under the enumerated statutes. While it is true that ERISA and the cited statutes share the common denominator of "pension and welfare" benefits, the *private pension and welfare benefits sweepingly regulated* by ERISA differ considerably from the *public funded and/or created pension and welfare systems,* or the *few exceptional, traditionally guarded industries* covered by the illus-

trative listings. We believe that these latter, narrow characteristics of the cited statutes, rather than the broad, common trait of private pension and welfare legislation, was intended as the operative thread by which other federal statutes—overlooked or yet to be enacted—might be included. Thus, we conclude that Congress did not intend to include ERISA-qualified plans within the other "Federal law" exemption of the Section 522 election provision. [Footnotes omitted]

*Matter of Goff,* 706 F.2d at 585.

The Utah Bankruptcy Court has addressed this specific issue and found that

Although the issue is not free from doubt, and while it would be highly desirable from a policy standpoint if Congress were to address the issue and not leave it to the courts to draw inferences from Congressional silence, this Court is inclined to follow the reasoning of *Goff* and *Lichstrahl,* and reject that of *In re Hinshaw.* In this regard it is perhaps significant that Congress chose not to deal with the issue in the 1984 Amendments, suggesting it did not disagree with the interpretation given Section 522(b)(2)(A) by a majority of the courts.

*In re Kerr,* 65 B.R. 739 (Bkrtcy.D.Utah 1986).

This court finds the reasoning in *Goff* and its progeny persuasive. It was not the intent of Congress to include ERISA–qualified pension and profit sharing plans in the "under Federal law" language of Section 522(b)(2)(A). Therefore, this court holds that the Debtor's pension and profit sharing plans are not exempt property under Section 522(b)(2)(A).

*Exempt Property Under C.R.S. 13–54–104*

■ The final issue to be determined is whether the plans qualify as exempt property under the Colorado statute, C.R.S. 13–54–104. This statute places restrictions on garnishment and levy under execution or attachment, and comprises part of the exemptions under Colorado law. In order to determine the exemptions to which the Debtor is entitled, this court must rely on

the law as it stood when Debtor filed his petition in bankruptcy in 1986.[1] The statute in effect at that time read:

(1) As used in this section, unless the context otherwise requires:

(a) "Disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.

(b) "Earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, avails of any pension or retirement benefits, or deferred compensation plan, avails of health, accident, or disability insurance, or otherwise....

(2)(a) Except as provided in subsection (3) of this section, the maximum part of the aggregate disposable earnings of an individual for any workweek which is subjected to garnishment or levy under execution or attachment may not exceed twenty-five percent of his disposable earnings for that week or the amount by which his disposable earnings for that week exceed thirty times the federal minimum hourly wage prescribed by section 206(a)(1) of title 29 of the United States Code in effect at the time the earnings are payable, whichever is less.

It is Debtor's argument that this statute exempts 75% of the entire balance of his pension and profit sharing plans. In order to determine if this argument is correct, the language of the statute itself must be examined, specifically, 13–54–104(1)(b).

This paragraph defines "earnings." The types of payments that are cited are periodic payments; wages, salary, commission and bonus. Payments from health, accident or disability insurance are also of the type that are made periodically. The maxim *noscitur a sociis,* that a word is known by the company it keeps, should be applied where a word is capable of different meanings in order to avoid giving unintended breadth to legislative acts. *Jarecki v. G.D. Searle & Co.,* 367 U.S. 303, 81 S.Ct. 1579, 6

---

**1.** C.R.S. 13–54–104 was amended effective July 1, 1988.

L.Ed.2d 859 (1961). The pension and retirement benefits are listed with other types of payments that are generally made on a periodic basis. Following the rule of *noscitur a sociis,* the logical conclusion must be that the pension and retirement benefits are periodic payments also. And yet the Debtor would have this court believe that, rather than periodic payments from pension or retirement plans, the entire corpus of the plan (or 75% of it) should be exempt. This court does not accept Debtor's argument.

It would have been very simple for the Colorado legislature to leave off the "avails of" language that seems to be causing the confusion. If that language had not been included, it would have been abundantly clear that the *entire* pension or retirement plan would be 75% exempt. The Tenth Circuit stated in *Salt Lake County v. Utah Copper Co.,* 93 F.2d 127 (10th Cir.1937) that "it is a cardinal rule of construction of statutes that effect should be given, if possible, to every word, phrase, clause, and sentence." A statute should not be construed so as to make part of that statute redundant. *Ginsberg & Sons v. Popkin,* 285 U.S. 204, 52 S.Ct. 322, 76 L.Ed. 704 (1932). To interpret the Colorado statute the way the Debtor would like, would be to make completely redundant the "avails of" language, because the entire balance of a retirement plan would be 75% exempt *without* the "avails of" language.

When the statute was amended in 1988, the legislature not only left the "avails of" language in, but it specifically defined it as "profits or proceeds." *Black's Law Dictionary,* 5th Ed. defines "proceeds" as: 1) issues, 2) income, 3) yield, 4) receipts, 5) produce, 6) money or articles or other thing of value arising or obtained by the sale of property, 7) the sum, amount, or value of property sold or converted into money or into other property. The Debtor in his brief cites only definition # 7 and ignores all the rest. However, the pension and profit sharing plans are not being sold or converted, hence definition # 7 does not apply. Definitions # 1 through # 5 do, particularly "income" and "yield." Using these definitions, this court must conclude

that "avails of" means the interest or income accruing on the pension and profit sharing plans; i.e., the periodic payments made on such plans.

Debtor argues that the equities require a ruling in his favor. He is 57 years old and these plans are the only retirement benefits he has. By making such a ruling the Debtor's creditors would be forced, in effect, to finance his retirement. However, ruling against the Debtor will not deprive him of all his retirement benefits—it will only deprive him of the "corpus" of the plans. Any interest paid on the funds in the plan will be 75% exempt. Assuming a statutory rate of interest of 8% (which could be higher or lower, depending on the vehicles in which the funds were invested) the plans would be paying almost $20,000 per year based on the amount in the plans when Debtor filed his bankruptcy petition. Using the "Rule of 72," funds deposited in the plans in 1980 would have doubled by 1989, and theoretically at least, half of the funds in the plans today would be 75% exempt.

This interpretation of C.R.S. 13–54–104 will exempt a large portion of the retirement benefits of a debtor whose retirement plans have been in effect for a long period. It will have a much harsher effect on a debtor who has just recently established a pension .or retirement plan. It will also guard against a debtor that dumps as much of his assets as possible into some sort of retirement vehicle shortly before bankruptcy. The *Kerr* court *supra* effectively explained the dual purpose of exemption provisions:

> The first object of any exemption scheme is to provide the debtor with the minimum amount of property necessary to retain his dignity and to attempt self-rehabilitation following his discharge. The second purpose behind exemption laws is to set a ceiling on the maximum amount of property which a debtor should be permitted to retain before infringing on the reasonable interests of creditors in that property. The unwillingness of Congress to provide a blanket exclusion or exemption of retirement funds suggests a balancing of these purposes.

Exempting the interest and income of Debtor's plans will allow the Debtor to "retain his dignity and to attempt self-rehabilitation" without "infringing on the reasonable interests of creditors."

This court must find that only those portions of Debtor's pension and profit sharing plans that are interest or income are exempt under C.R.S. 13-54-104. To rule otherwise would allow the Debtor a nearly quarter of a million dollar windfall.

ORDERED that the Debtor's pension and profit sharing plans are property of the estate.

FURTHER ORDERED that Debtor's pension and profit sharing plans are not exempt under 11 U.S.C. 522(b)(2)(A).

FURTHER ORDERED that 75% of the interest or income earned in Debtor's pension and profit sharing plans is exempt under C.R.S. 13-54-104.