In the Matter of James G. TISDALE, Jr. d/b/a Kitchens Extraordinaire, Debtor.

Bankruptcy No. 2–89–01059.

United States Bankruptcy Court, D. Connecticut.

March 16, 1990.

Laura Gold Becker, Law Offices of Thomas M. Germain, Hartford, Conn., for trustee.

Gregory F. DeManche, O'Connell, Flaherty, Attmore & Forsyth, Hartford, Conn., for debtor.

## MEMORANDUM AND ORDER

ROBERT L. KRECHEVSKY, Chief Judge.

### I.

### ISSUE

The principal questions raised in this proceeding are the extent to which a debtor's interest in a defined contribution plan, qualified under The Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* (ERISA), and tax exempt pursuant to § 401 of the Internal Revenue Code, 26 U.S.C. § 1 *et seq.*, is property of the estate, and if such property, exemptive by the debtor. The debtor has conceded that his two Individual Retirement Accounts, *see* 26 U.S.C. § 219, are property of the estate and exemptive only to the extent of the unused exemption available to him under § 522(d)(5) of the Bankruptcy Code (Code).[1]

---

**1.** Section 522(d)(5) states:

The debtor's aggregate interest in any property, not to exceed, in value $400 plus up to $3,750 of any unused amount of the exemp-

tion provided under paragraph (1) of this subsection.

11 U.S.C. § 522(d)(5) (1988).

## II.

## BACKGROUND

James G. Tisdale, the debtor, is a 41–year–old, formerly married individual who has been employed by Monaco & Sons Motor Sales, Incorporated (Monaco) for the past 14 years. He currently is Monaco's sales manager and earned $58,000.00 in 1987 and 1988, and $36,000.00 in 1989. He filed a voluntary chapter 7 petition on August 15, 1989. In schedule B–3 submitted with his petition, the debtor listed under the category of "Property of any kind not otherwise scheduled" a "Monaco & Sons Motor Sales, Inc. 401K Savings and Retirement Plan distributable upon termination or death" (Plan), with a stated market value of $82,164.14. In schedule B–4, the debtor, specifying Code § 522(d)(10)(E) [2] as the statute creating the exemption, exempted the full value of the Plan.

Thomas M. Germain, trustee of the debtor's estate, timely objected to the debtor's claims that the Plan was either excludable from property of the estate or that it was exemptive by the debtor.

Monaco's Plan provides for various types of savings, retirement and death benefits for any of its employees who choose to participate. The two benefits that are at issue here are a Deferred Contributions Account (DCA) and a Regular Account (RA). The DCA indicates a fund maintained by the Plan trustees into which a Plan participant elects to place a portion of his earnings through payroll deductions. These earnings thereby become nontaxable until retrieved by a participant. The debtor has had either six or seven percent of his annual compensation placed in the DCA. The RA contains funds contributed by Monaco at its discretion matching those

the debtor placed in his DCA, plus any additional contributions from company profits authorized by Monaco's board of directors. In the debtor's instance, the RA also includes funds rolled over from a prior retirement plan, some of which funds came from the debtor's earnings with the balance constituting Monaco's contributions. The debtor is fully vested in the funds in the RA, having participated in the Plan for over ten years.

The Plan contains an ERISA-mandated anti-alienation provision which reads as follows:

> Section 16.3. The Trust Fund is established for the purpose of providing for the support of the Participants upon their retirement and for the support of their families. Except as provided in Sections 16.5 and 16.6 hereof, no right or interest of any Participant in any part of the Trust Fund shall be transferrable or assignable by the Participant or be subject to alienation, anticipation, or encumbrance by the Participant, and no such right or interest shall be subject to garnishment, attachment, execution, or levy of any kind.

Unless the accounts are previously depleted as hereinafter explained, the Plan states that the debtor or his estate, as the case may be, is entitled to the accumulated funds in his accounts on the earlier of his retirement age of 65, his permanent disability, or his death. *Articles IX and X.* The debtor has the right to direct how the funds in his accounts are invested in investment vehicles made available by the Plan trustee. Monaco retains the option to terminate the Plan at any time and distribute all funds to the participants.

Section 16.5 excepts from Section 16.3 any court order "which creates or recog-

---

**2.** Section 522(d)(10)(E) exempts a debtor's right to receive—

> (E) a payment under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract on account of illness, disability, death, age, or length of service, to the extent reasonably necessary for the support of the debtor and any dependent of the debtor, unless—
> (i) such plan or contract was established by or under the auspices of an insider that em-

ployed the debtor at the time the debtor's rights under such plan or contract arose;
> (ii) such payment is on account of age or length of service; and
> (iii) such plan or contract does not qualify under section 401(a), 403(a), 403(b), 408, or 409 of the Internal Revenue Code of 1954 (26 U.S.C. 401(a), 403(b), 408, or 409).
> 11 U.S.C. § 522(d)(10)(E) (1988).

nizes the existence of an alternate payee's right to receive all or a portion of the benefits payable to a Participant hereunder pursuant to a State's domestic relations law." Section 16.6 requires upon written request of the debtor that the Plan Trustees loan the debtor any and all of the vested portions of his accounts, if the purpose of the loan is to defray "extraordinary unreimbursed medical expenses" or "significant educational expenses" of the debtor or his dependents, or for "the purchase of a principal place of residence" for the debtor. The loans cannot exceed the lesser of $50,000.00 or 50% of the vested value of the debtor's accounts. Section 12.5 permits the debtor to apply for all his benefits upon termination of his employment with Monaco. Section 23.1 allows the debtor, once a year, upon submission to the Plan Administrator of proof of financial hardship due to extraordinary unreimbursed medical expenses or educational expenses, to withdraw up to 90% of the value of the accounts.[3]

### III.

### DISCUSSION

Code § 541, entitled "Property Of The Estate," is a detailed, broad and encompassing provision designed to include within a debtor's estate "all legal or equitable

---

**3.** Oral testimony was received at trial which contradicts the written provisions of the Plan in several respects. Since the outcome of the ruling would not be changed even if the Plan were modified by this parol evidence, only the written Plan introduced into evidence is being considered.

**4.** The legislative history of § 541 clearly establishes the Congressional intent that the estate be as broad as the language of the particular section indicates:

The scope of the paragraph is broad. It includes all kinds of property, including tangible and intangible property, causes of action ... and all other forms of property specified in section 70(a) of the Bankruptcy Act.... [I]t includes as property of the estate all property of the debtor, even that needed for a fresh start.

S.Rep. No. 989, 95th Cong., 2d Sess. 82, *reprinted in* 1978 U.S.Code Cong. & Admin.News 5787, 5868; H.R.Rep. No. 595, 95th Cong., 1st Sess. 367–68 (1977), *reprinted in* 1978 U.S.Code Cong.

---

interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1) (1988).[4] One of the statutory exclusions to property of the estate is contained in § 541(c)(2): "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." 11 U.S.C. § 541(c)(2) (1988).

### A.

■ The debtor first contends that the phrase "applicable nonbankruptcy law" includes an ERISA-qualified contribution plan with its anti-alienation clause (*see* 26 U.S.C. § 401(a)(13)), thereby excluding the Plan from property of the estate. Although a few early district and bankruptcy court rulings[5] adopted such a reading, the vast majority of opinions, including at least four United States Courts of Appeals, have rejected that position. These courts hold that ERISA itself does not provide a basis for exclusion under § 541(c)(2), and that Congress intended only trusts enforceable under state law as spendthrift trusts be excluded.[6] I conclude that the majority position should be adopted and hold that § 541(c)(2) applies to the Plan only if it qualifies as a spendthrift trust under Con-

---

& Admin.News 6322–24; *see In re Graham,* 726 F.2d 1268, 1270 (8th Cir.1984).

**5.** *Clotfelter v. CIBA–GEIGY Corp. (In re Threewitt),* 24 B.R. 927 (D.Kan.1982); *In re Ralstin,* 61 B.R. 502 (Bankr.D.Kan.1986); *Warren v. G.M. Scott & Sons (In re Phillips),* 34 B.R. 543 (Bankr. S.D.Ohio 1983).

**6.** *In re Daniel,* 771 F.2d 1352 (9th Cir.1985), *cert. denied,* 475 U.S. 1016, 106 S.Ct. 1199, 89 L.Ed.2d 313 (1986); *In re Lichstrahl,* 750 F.2d 1488 (11th Cir.1985); *In re Graham,* 726 F.2d 1268 (8th Cir.1984); *In re Goff,* 706 F.2d 574 (5th Cir. 1983); *In re Velis,* 109 B.R. 64 (Bankr.D.N.J. 1989); *In re Burns,* 108 B.R. 308 (Bankr.W.D. Okla.1989); *In re Alagna,* 107 B.R. 301 (Bankr. D.Colo.1989); *In re Toner,* 105 B.R. 978 (Bankr. D.Colo.1989); *Fogler v. Flindall (In re Flindall),* 105 B.R. 32 (Bankr.D.Ariz.1989); *In re Herndon,* 102 B.R. 893 (Bankr.M.D.Ga.1989); *Heitkamp v. Dyke (In re Dyke),* 99 B.R. 343 (Bankr.S.D.Tex. 1989); *In re Matteson,* 58 B.R. 909 (Bankr.D. Colo.1986). *Cf. Regan v. Ross,* 691 F.2d 81 (2d Cir.1982).

necticut law.[7]

B.

The debtor argues that the limited control of a Plan participant over the funds in the accounts together with the Plan's anti-alienation clause satisfies Connecticut law for the creation of a valid spendthrift trust.

Connecticut law recognizes the validity of a spendthrift trust which is usually defined as one "which creates a fund for the benefit of another, secures it against the beneficiary's own improvidence, and places it beyond the reach of his creditors." *Zeoli v. Commissioner of Social Services*, 179 Conn. 83, 88, 425 A.2d 553, 555 (1979). Such trusts are further controlled by Conn. Gen.Stat. § 52–321.

§ 52–321. *Liability of income of trust fund to creditors. Expenses of trustee*

(a) If property has been given to trustees to pay over the income to any person, without provision for accumulation or express authorization to the trustees to withhold the income, and the income has not been expressly given for the support of the beneficiary or his family, the income shall be liable in equity to the claims of all creditors of the beneficiary.

(b) Any creditor of the beneficiary who has secured a judgment against the beneficiary may bring an action against him and serve the trustees with garnishee process, and the court to which the action is returnable may direct the trustees to pay over the net income derived from the trust estate to the judgment creditor, as the income may accrue, until the creditor's debt is satisfied.

(c) The court having jurisdiction over the fund may make such an order for payment pursuant to subsection (b) when the beneficiary is a nonresident of this state, as well as when the beneficiary is a resident, but in the case of a nonresident beneficiary notice shall be given to the nonresident of the action against him as provided in section 52–87. The nonresidence of the beneficiary shall not deprive the court of authority to make such an order.

(d) If any such trust has been expressly provided to be for the support of the beneficiary or his family, a court of equity having jurisdiction may make such order regarding the surplus, if any, not required for the support of the beneficiary or his family, as justice and equity may require.

(e) The defendant trustee in any such action shall be entitled to charge in the administration account of the trust such expenses and disbursements as the court to which the action is brought determines to be reasonable and proper.

Conn.Gen.Stat.Ann. § 52–321 (West Supp. 1989).

■ The Connecticut Supreme Court, in *Greenwich Trust Co. v. Tyson*, 129 Conn. 211, 219, 27 A.2d 166, 171 (1942), ruled that public policy denied the validity of a trust where a person placed "his property in trust for his own benefit under limitations similar to those which characterize a spendthrift trust." This holding is in accordance with prevailing law throughout the United States. *See* Bogert, *Trusts and Trustees* § 223 (2d ed. rev. 1979) (If a settlor creates a trust for his own benefit and inserts a spendthrift clause, it is void as far as existing or future creditors are concerned, and they can reach his interests under the trust.). Accordingly, the debtor's interest in the DCA, which contains only the debtor's own funds, is property of the estate and not excluded under § 541(c)(2).

■ Whether the debtor's interest in the RA is property of the estate presents a more difficult question. The monies placed in that account were Monaco contributions and not the debtor's funds.[8] The account's purpose is to be available for the debtor's support upon his retirement, and it is subject to the restrictions of the anti-alienation clause. The remaining issue is whether the debtor retains that degree of control over

---

7. Plan section 20.4 states that the "Plan shall be construed according to the laws of the State of Connecticut."

8. Except for the apparent inadvertent rollover of the debtor's monies from a prior plan.

the account so as to render it unenforceable as a spendthrift trust.

■ Connecticut courts have held that a trust which contains an anti-alienation clause but which gives the beneficiary unrestricted access to the income is not a spendthrift trust. *Carter v. Brownell*, 95 Conn: 216, 111 A. 182 (1920); *Drummond v. Cowles*, 278 F.Supp. 546, 550 (D.Conn. 1968) ("Connecticut has consistently supported the basic precept that a debtor must assume responsibility for his debts, at least to the extent of property under his control."). However, trusts which restrict the use of trust income and corpus to the support of the beneficiary are inalienable and not subject to the claims of the beneficiary's creditors. *Holmes v. Bushnell*, 80 Conn. 233, 67 A. 479 (1907). *See also Restatement (Second) of Trusts* § 154 (1959) (If, by the terms of a trust, it is provided that the trustee shall pay or apply only so much of the income or principal as is necessary for the education or support of the beneficiary, the beneficiary cannot transfer his interest and his creditors cannot reach it.).

Monaco's Plan, as hereinbefore noted, limits the debtor's control either by way of loan or through hardship withdrawal only to so much of the RA funds as are necessary for the debtor's support (medical, educational or purchase of a home). There is Connecticut authority that employer-funded pension plans containing restraints on alienation with the right of trustees to withhold distribution constitute spendthrift trusts. *Hildreth Press Employee Fed. Credit Union v. Connecticut Gen. Life Ins. Co.*, 30 Conn.Supp. 513, 295 A.2d 54 (Conn.C.P.), *cert. denied*, 163 Conn. 643, 295 A.2d 669 (1972). The *Hildreth* pension plan contained a provision that upon termi-

nation of employment an employee could elect to receive all funds accumulated in his account. A bankruptcy court in this district also concluded under the Bankruptcy Act of 1898 that a defined contribution plan which permitted a bankrupt to obtain the funds in his account in the event of termination of employment did not make his interest in the plan subject to the control of the estate trustee. *In re Hurd*, No. H–77–993 (D.Conn. July 12, 1978) (LEXIS, Bkrtcy library, Cases file) (Seidman, J.).

In light of the foregoing authorities, I conclude that in Connecticut the debtor's interest in the RA account, except for the debtor's own contributions, is not subject to the claims of creditors and, therefore, the RA is not property of the debtor's estate.[9]

## C

■ The debtor's final contention is that if the DCA funds are property of the estate, he is entitled to exempt them under § 522(d)(10)(E). *In re Clark*, 711 F.2d 21 (3rd Cir.1983), holds that § 522(d)(10)(E) only applies where the debtor has a present right to receive payments from the pension plan. Here, the debtor concededly did not. *Cf. Warren v. Taff (In re Taff)*, 10 B.R. 101 (Bankr.D.Conn.1981). Even if the court considers the matter of the debtor's future needs for the funds, the record does not support a finding that the "reasonably necessary" standard has been met. *See In re Kochell*, 732 F.2d 564 (7th Cir.1984).

## IV.

## CONCLUSION

Upon the trustee's objection to the debtor's claim of exemption, the objection is sustained as to the debtor's Individual Re-

---

9. For cases in accord from other states whose spendthrift trust law seems to parallel that of Connecticut, see *Tambay Trustee, Inc. v. Florida Progress Corp. (In re Lawson)*, 67 B.R. 94 (Bankr.M.D.Fla.1986); *Boon v. Miner (In re Boon)*, 108 B.R. 697 (W.D.Mo.1989); *Mitchell v. West (In re West)*, 81 B.R. 22 (9th Cir. BAP 1987); *In re Hysick*, 90 B.R. 770 (Bankr.E.D.Pa. 1988). *See also* Seiden, *Chapter 7 Cases: Do ERISA And The Bankruptcy Code Conflict As To Whether A Debtor's Interest In Or Rights Under A*

*Qualified Plan Can Be Used To Pay Claims?* (pts. 1 & 2), 61 Am.Bankr.L.J. 219, 339 (1987) ("Thus, in order to effectuate the purpose of ERISA that plan benefits be available for retirement purposes *and* the purposes of the chapter 7 bankruptcy laws, a debtor's interest in an ERISA qualified plan should be excluded from being property of a chapter 7 debtor's estate except to the extent the debtor has a current right to withdraw or receive any portion of the debtor's interest in the plan.").

tirement Accounts with Phoenix Equity Planning (Acct. #3713495-2) and with American Savings Bank (Plan #17-012569), the debtor's interest in his Deferred Contributions Account with Monaco & Sons Motor Sales Incorporated Savings and Retirement Plan (up to the date of the filing of his bankruptcy petition including all earnings on savings to that date), and the monies the debtor contributed to the Regular Account (up to the date of the filing of his bankruptcy petition including all earnings on such contributions to that date). The debtor's interest in the Regular Account and earnings thereon derived from contributions by Monaco is found pursuant to § 541(c)(2) to be excluded from the estate. It is

SO ORDERED.