**In re John Edwin STARKEY, Debtor.**

**In re Delbert Lester RICHARDSON and Carole Ann Richardson, Debtors.**

**In re Patrick Vaughn DAILY, Debtor.**

**Bankruptcy Nos. 89 B 14923 E, 90 B 00089 E and 90 B 00985 E.**

United States Bankruptcy Court, D. Colorado.

July 13, 1990.

---

R. Scott Schofield, Colorado Springs, Colo., for debtor, John Edwin Starkey.

Dean T. Ogawa, Colorado Springs, Colo., Interim Trustee for the Estate of debtor, John Edwin Starkey.

Dale W. Aarestad, Colorado Springs, Colo., for debtors, Delbert and Carole Richardson.

Sally J. Zeman, Denver, Colo., Standing Chapter 13 Trustee for the Estate of debtors, Delbert and Carole Richardson.

Loretta A. Burnett, Colorado Springs, Colo., for debtor, Patrick V. Daily.

Sally J. Zeman, Denver, Colo., Standing Chapter 13 Trustee for the Estate of debtor, Patrick V. Daily.

## OPINION AND ORDER ON OBJECTIONS TO EXEMPTIONS

CHARLES E. MATHESON, Chief Judge.

These matters came before the Court in the above three cases, John Edwin Starkey ("Starkey"), Delbert L. and Carole Ann Richardson ("Richardson") and Patrick V. Daily ("Daily"), (collectively referred to as "Debtors"), on objections filed by the respective trustees to each Debtor's claim of exemptions. In each case the Debtors have scheduled, as a part of their assets, an

interest in an Employee Retirement Income Security Act of 1974 ("ERISA") qualified pension plan. In each case the Debtors have claimed part or all of those benefits as being exempt pursuant to the provisions of 11 U.S.C. § 522(b)(2). The Court hereby determines that the Trustees' objections must be disallowed and the Debtors' claimed exemptions must be allowed to them.

The facts in these three cases are similar. In each case the Debtor had been a participant in a "401(k)" ERISA qualified benefit plan at his or her place of employment. In each instance the Debtor had made contributions into the plan and there is accrued to the Debtor's account benefits attributable to the Debtor's contributions and, except as to Ms. Richardson, employer contributions, together with earnings on those accounts. In each instance, the plans specify that the amounts contributed by the employee could be withdrawn at any time. If not withdrawn, those amounts remained in the plan and became part of the benefits to be ultimately distributed by the trustees under the plan. As to the employer contributions, the Debtors had limited rights to effect withdrawals for hardship purposes or, as required by ERISA, to pay child support benefits. The Debtors have the right, if their employment terminated, either voluntary or involuntarily, to withdraw all of the benefits under the plan in cash. If such withdrawals were made then, under the tax laws, the Debtor had sixty days within which to elect to rollover the benefits into another qualified plan in order to avoid present taxation on the distributions.

There were some factual differences in the status of the plans either at the time the petitions were filed or shortly thereafter. With respect to Richardson, the company with whom she was employed and with whom her pension benefits had accrued, went out of business in the year prior to the time she filed her Chapter 13 case. She has a total of approximately $3,200 which has accrued to her benefit in the plan. Because her employer went out of business, the pension plan has been terminated and, at the time she filed her peti-

tion in bankruptcy, she had the right to withdraw all of her accrued plan benefits. It is her expressed intention to withdraw those benefits and to roll them over into an IRA.

Starkey was employed at the time he filed his bankruptcy case. However, within a month after the filing, due to general business cutbacks by his employer, Starkey was discharged. Two months thereafter, he received approximately $28,000 in distributions out of the plan.

Daily was employed at the time he filed his petition and has remained employed by the same employer. Thus, at no time during the case has Daily been in a position to withdraw the amounts contributed to the plan by his employer except by terminating his employment. He did retain, however, the right to withdraw the sums that he had contributed.

The status of ERISA plans in bankruptcy in Colorado has been visited in several recent opinions by judges of this Court. *See In re Matteson*, 58 B.R. 909 (Bankr.D.Colo. 1986); *In re Toner*, 105 B.R. 978 (Bankr.D. Colo.1989); *In re Alagna*, 107 B.R. 301 (Bankr.D.Colo.1989). The *Toner* opinion has been affirmed in an unpublished order of the district court. This Court has no desire to revisit this area and would not do so but for the existence of a more recent opinion by the United States Supreme Court which touches, at least in *dicta*, on the problems in interpreting the law in this area. *Guidry v. Sheet Metal Workers Nat. Pension Fund*, — U.S. —, 110 S.Ct. 680, 107 L.Ed.2d 782 (1990).

■ Any analysis in this area must start with the provisions of 11 U.S.C. § 541(c). The question is whether the Debtors' rights in their pension plans became property of their bankruptcy estates in the first instance or were excluded from their estates because the pension plans must be considered to be valid state spendthrift trusts, or arguably that the provisions of ERISA (29 U.S.C. § 1056(d)(2)) should be considered to be "applicable nonbankruptcy law" for the purposes of the spendthrift provisions of section 541(c)(2). In this area

the law has been clearly developed to establish that ERISA is not other applicable nonbankruptcy law for purposes of section 541(c)(2).[1] *In re Goff,* 706 F.2d 574 (5th Cir.1983); *In re Toner, supra; In re Alagna, supra.* The initial question then must be whether the Debtors' pension plans should be considered to not be part of these bankruptcy estates because the plans are valid spendthrift trusts. *In re Alagna, supra.*

■ The factors to be considered in such an analysis have been set forth in the opinions by the judges in this Court in the *Toner, Alagna* and *Matteson* cases above referred to. There are various factors that must be considered.

The plans presently before the Court all contain the anti-alienation language required by ERISA. 29 U.S.C. § 1056(d)(1). Both Starkey and Daily involve vested accounts of funds contributed by the employer as well as those voluntarily contributed by the Debtor. In the Richardson case all of the funds in her account were deposited or contributed by her. As noted, with respect to the voluntary contributions, each Debtor has had the absolute right to withdraw those funds, but the right to withdraw employer contributed funds while an employee is limited to hardship distributions or child support provisions. The Debtors could, however, gain access to the employer contributed funds simply by terminating employment. The Debtors also retain various other types of control, such as the right to change the beneficiaries under the plan and, in certain circumstances, the right to direct or control the investments.

On balance, the Court believes that the extent of control in all of the cases, particularly the retained right to obtain a present distribution of all plan benefits by the expedient of terminating employment, negates a conclusion that these plans constitute valid spendthrift trusts under state law. *In re Balay,* 113 B.R. 429 (Bankr.N.D.Ill. 1990); *In re Swanson,* 79 B.R. 422 (D.Minn.1987).[2] Thus, the Debtors' interests in the plans constitute property of their respective estates. The question then becomes whether some or all of the interests can be claimed to be exempt pursuant to the provisions of 11 U.S.C. § 522(b)(2).

The exemption scheme set forth in section 522 of the Code gave the states the opportunity to elect whether citizens could take advantage of the federal exemptions provided in 11 U.S.C. § 522(d), or whether they would be limited to the exemptions specified under section 522(b)(2). Colorado elected to opt out of the federal exemptions. C.R.S. § 13–54–107. Thus, the right of the Debtors to claim an exemption in their pension funds is governed by the provisions of section 522(b)(2) of the Bankruptcy Code which provides:

> (b) Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate
>
> ....
>
> (2)(A) any property that is exempt under Federal law, other than subsection (d) of this section, or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located for the 180 days immediately preceding the date of the filing of the petition....

Colorado has two statutory provisions which relate to possible exemptions for pension plans. Both are found under those sections of the state law which exempt 75% of a debtor's "earnings" from garnishment and levy. C.R.S. §§ 13–54–104 and 13–54.-

---

**1.** Although a strong argument can be made in favor of interpreting 11 U.S.C. § 541(c)(2) as encompassing the anti-alienation provisions of ERISA, to reach such a conclusion would mean all ERISA benefits would be excluded as being property of the estate. Thus, there would never be a claim of exemption as to ERISA benefits. An interpretation leading to this result would be contrary to 11 U.S.C. § 522(d)(10)(E) which allows, as a federal exemption, a debtor to retain at least a limited interest in tax advantaged ERISA plans as well as other tax advantaged pension plans.

**2.** But see *In re Kellas,* 113 B.R. 673 (D.Ore.1990), interpreting Colorado law and holding that such plans would be considered valid spendthrift trusts in this state, at least to the extent of the employer contributions.

5-101. For the purposes of this statute "earnings" were initially defined as:

"Earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, avails of any pension or retirement benefits, or deferred compensation plan, avails of health, accident, or disability insurance, or otherwise. C.R.S. § 13-54.5-101.

In 1988 the Colorado State Legislature amended the statute to clarify the definition of "earnings" for purposes of bankruptcy. A new section was added to the statute which specifies as follows:

For purposes of this section and only for the purpose of claiming an exemption in bankruptcy, "avails of any pension or retirement benefits, or deferred compensation plan" means profits or proceeds in any pension or retirement plan or deferred compensation plan, including those in which the debtor has received benefits or payments or has the present right to receive benefits or payments or has the right to receive benefits or payments in the future and including pensions or plans which qualify under the federal "Employee Retirement Income Security Act of 1974" as an employee pension benefit plan, as defined in 29 U.S.C. § 1002, avails of any individual retirement account, as defined in 26 U.S.C. § 408, and avails of any KEOGH plan, as defined in 26 U.S.C. § 401. C.R.S. § 13-54-104(1.1).

■ This Court has recently held the 1988 statutory amendment to be an invalid and unconstitutional attempt by the State of Colorado to create a special bankruptcy exemption. *In re Mata,* 115 B.R. 288 (Bankr.D.Colo.1990). Further, with respect to ERISA plans, because the exemption provision of the Colorado statute makes express reference to such plans, it is clear that this provision must be considered to have been preempted by the explicit provisions of ERISA. *Mackey v. Lanier Collections Agency,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988); *Pilot Life Insurance Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). As a result, the Debtors can claim no benefits or exemptions under the amended provision of the Colorado statutes. The question remains as to whether the Debtors may claim some exemption in the "avails" of their pension plans pursuant to the provisions of C.R.S. § 13-54.5-101(2). Such a right was found to exist in the case of *In re Alagna, supra.* With deference and respect to the views expressed in *Alagna,* this Court cannot concur.

In *Mackey, supra,* the Supreme Court considered the preemption issue with respect to a welfare benefits plan. Even though ERISA contains no anti-alienation provision as to welfare benefit plans, but only as to pension plans, the Court held that ERISA preempted a Georgia statute which "related to" ERISA because, by its terms, it made express reference to ERISA. On the other hand, the Court held that the Georgia general garnishment statute, which did not make specific reference to ERISA, was not preempted and, therefore, pursuant to that statute, the judgment creditor could garnish the debtors' interests in their ERISA benefit plan. What the Court made clear in *Mackey* was that once Congress has spoken in this area, the states cannot pass laws which will deprive participants in ERISA plans of benefits guaranteed them by Congressional mandate.

■ The anti-alienation provisions of ERISA have now been recognized as barring a creditor's efforts to reach the interest of a debtor in a pension plan, whether the creditor proceeds by way of the imposition of a constructive trust on those interests or by way of a writ of garnishment. *Guidry, supra.* Thus, under ERISA, the debtor's interest in a pension plan must be considered to be fully exempt from involuntary alienation by way of a writ of execution or otherwise.

■ The Colorado statute which limits an exemption in pension plan benefits to 75% of the "avails" of any such plan would serve to restrict the 100% exemption mandated by ERISA. Any such effort by the State of Colorado to restrict Congressionally mandated rights must be held to have

been preempted. *Mackey, supra.* Thus, no exemption can be found under state law for the "avails" of the ERISA plans at issue in these proceedings.

■ The remaining question before the Court, then, is whether the provisions of 29 U.S.C. § 1056(d)(2) constitute a separate federal exemption for purposes of 11 U.S.C. § 522(b)(2)(A). The clear trend has been to say no. *In re Goff, supra.* This trend has been followed in this District by *Toner* and *Alagna*, relying on the Fifth Circuit opinion in *Goff.*

A strong voice to the contrary has now been heard in the case of *In re Komet*, 104 B.R. 799 (Bankr.W.D.Tex.1989). That case has been followed in the case of *In re Felts*, 114 B.R. 131 (Bankr.W.D.Tex.1990). Support for the conclusions reached by those courts can now be found in the Supreme Court's opinion in *Guidry, supra.*

The focus must start with *Mackey.* That opinion was handed down by the Supreme Court some four years after the opinion in *Goff.* In reaching its conclusion on the preemption issue in *Mackey*, the Supreme Court, on three separate occasions, took the opportunity to comment on the fact that ERISA contains explicit anti-alienation language for pension benefits. The language utilized by the Court in making these comments is instructive. The Court stated:

> Where Congress intended in ERISA to preclude a particular method of state-law enforcement of judgments, or extend anti-alienation protection to a particular type of ERISA plan, it did so expressly in the statute. Specifically, ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans. 108 S.Ct. at 2188.

Again:

> But by adopting § 206(d)(1), Congress demonstrated that it could, where it wished to, stay the operation of state law as it affects only benefits and not plans. 108 S.Ct. at 2189.

And again:

> Ultimately, in examining §§ 206(d)(1) and 514(a) there is no ignoring the fact

that, when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans, and *not* ERISA welfare benefit plans. 108 S.Ct. at 2189.

These explicit statements by the Supreme Court, all *dicta*, arguably establish a view of that Court that the language in ERISA does not merely set up guidelines to qualify pension plans for tax exempt treatment (which was the purpose seen by the *Goff* court for the statutory language), but sets up an explicit federal exemption protecting pension benefits from voluntary or involuntary alienation.

This area was revisited by the Supreme Court in *Guidry.* At issue in that case was whether the trustees of the pension trust could impose a constructive trust on an employee's pension benefits under that ERISA qualified plan in order to recover for losses incurred by the trust by the employee's defalcations in managing the pension trust funds. The Supreme Court in *Guidry* held that such a remedy would not be available. The Court revisited the language from *Mackey* cited above and stated:

> The view that the *statutory restrictions on assignment or alienation* of pension benefits apply to garnishment is consistent with applicable administrative regulations, with the relevant legislative history, and with the views of other federal courts. It is also consonant with other statutory provisions designed to safeguard retirement income. We see no meaningful distinction between a writ of garnishment and the constructive trust remedy imposed in this case. That remedy is therefore prohibited by section 206(d)(1) unless some exception to the general statutory ban is applicable. *Guidry, supra*, 110 S.Ct. at 685. (Emphasis added.)

The Court found no such exception to exist under the provisions of the Labor Management Reporting and Disclosure Act. In reaching its conclusion the Supreme Court expressed its views on the congressional

policy behind the anti-alienation provisions of ERISA in the following terms:

> Section 206(d) reflects a considered congressional policy choice, a decision to safeguard a stream of income for pensioners (and their dependents, who may be, and perhaps usually are, blameless), even if that decision prevents others from securing relief for the wrongs done them. If exceptions to this policy are to be made, it is for Congress to undertake that task. *Ibid,* 110 S.Ct. at 687.

Considering the *dicta* in *Mackey,* the holding in *Guidry,* and the strong view expressed by the Supreme Court that, in its opinion, it was the intention of Congress to create a federal exemption from involuntary alienation of pension benefits by the adoption of 29 U.S.C. § 1056(d)(2), this Court concludes that ERISA must be considered to be another federal exemption for purposes of 11 U.S.C. § 522(b)(2)(A). Thus, the ERISA pension benefits of these Debtors can properly be claimed by them to be exempt pursuant to those provisions. The conclusion reached by the Court is consistent with legislative history and properly harmonizes otherwise potentially conflicting results.

As to the legislative history, the Committee Notes on the provisions of section 522(b)(2) of the Bankruptcy Code point out that if the debtor elects exemptions pursuant to that section, "some of the items that may be exempted under other federal laws include" such things as Social Security payments, Railroad Retirement Act benefits, Civil Service retirement benefits and Veterans benefits. S.Rep. No. 989, 95th Cong. 2d Sess. 75–76 (1978), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5861. It is clear from this language that this was a non-exclusive list and it is a "non-sequitur to say that the failure to include something on an illustrative list is probative of an intent to exclude it from that list." *In re Komet, supra,* 104 B.R. at 815. To the contrary, "if Congress had desired to limit other federal law to only certain federal laws, it would have done so by incorporating the list into the statute and making it 'exclusive' as opposed to 'illustrative'." *In re Felts, supra.* Further, the federal exemptions just referred to are the same exemptions referred to by the Supreme Court in *Guidry* as being "other statutory provisions designed to safeguard retirement income." *Guidry, supra,* 110 S.Ct. at 685.

As to harmonizing potentially conflicting or disparate provisions of the Code, it is instructive to first look to the results which would occur in Colorado in the absence of a bankruptcy filing. Because ERISA preempts the state's garnishment statutes, immediately before the filing of a bankruptcy case a judgment creditor in this state would not be able to garnish or otherwise levy upon any ERISA pension benefits of these Debtors. By this Court's holding, the same result will occur in bankruptcy. However, if the anti-alienation provisions of ERISA are not recognized as being another federal exemption for purposes of 11 U.S.C. § 522(b)(2), in Colorado (and in other opt-out states), a debtor would have no exemption at all in his bankruptcy case for ERISA pension benefits, a result clearly not to be countenanced under the policy expressed in both *Mackey* and *Guidry.* Sterbach, Weiss and Salerno, *Pre-bankruptcy Planning for Professionals and ERISA Qualified Pension Plans: Are State Created Statutory Exemptions D.O.A. in Bankruptcy Proceedings?,* 94 Comm.L.J. 229 (1989).

The Court's conclusion is consistent as well in states which have not elected to opt-out of the federal exemption scheme of section 522(d) of the Code. In those states debtors can elect either to utilize the federal exemptions under section 522(d) or the exemptions provided under section 522(b)(2)(A). If they elect the federal exemptions, they are permitted to retain their benefits in an ERISA plan to the extent necessary for the support of the debtor. 11 U.S.C. § 522(d)(10)(E). If they elect the benefits of other federal exemptions and the available state exemptions, pursuant to 11 U.S.C. § 522(b)(2), then they are permitted a full exemption for all of their ERISA pension benefits. To decide otherwise, as noted above, would result in the debtor having available in the nonopt-out states a

limited exemption for ERISA benefits under § 522(d)(10)(E), but no exemption at all if they elect to utilize the state exemptions pursuant to § 522(b)(2) of the Code.

Having determined that these Debtors are entitled to the benefits of the exemptions provided by 29 U.S.C. § 1056(d)(2) and 11 U.S.C. § 522(b)(2)(A), the Court must then consider the amount these Debtors are allowed to retain in light of the circumstances of each case. In summary, those circumstances reflect that at the time the petitions were filed in each case, these Debtors had benefits which had accrued to them under their pension plans. Ms. Richardson, whose benefits were all attributable to contributions made by her, was awaiting distributions to be made from a pension plan which had been terminated. Both Mr. Starkey and Mr. Daily had personal contributions in their plans which they could withdraw but had not done so. Mr. Starkey's benefits would be paid to him in full within four months after the time he filed his bankruptcy petition.

■ The problem presented has previously been considered by the Fourth Circuit Court of Appeals in the case of *Tenneco Inc. v. First Virginia Bank of Tidewater*, 698 F.2d 688 (4th Cir.1983), cited with approval in *Guidry, supra*. In the *Tenneco* case, the employee had a vested interest in an ERISA qualified pension plan. Pursuant to the plan provisions, as here, when employment terminated, all accrued benefits under the plan became payable to the employee upon request. The employee was discharged from his job prior to retirement. At that time he made a partial withdrawal from the plan of $37,-000.00 which he deposited in a separate stock brokerage account. A judgment was obtained against him by the bank and the bank sought to garnish the remaining funds in the retirement account, as well as the funds in the brokerage account. As to the funds still in the retirement account the court held that the anti-alienation provisions of ERISA barred garnishment of those funds even though the employee had the right to draw the same out. The court stated:

The statutes, as amplified by the regulation, prohibit garnishment of benefits provided under the plan. There is no suggestion of a distinction based upon the method by which such benefits are payable. Sweeney's balances in the two accounts are benefits provided under the plan for him and, though payable to him in one lump sum, are beyond the reach of a writ of garnishment. *Ibid* at 690.

As to the funds that had in fact been withdrawn and deposited in the brokerage account, the court held that ERISA provided no protection for those sums and that they were subject to capture by the writ of garnishment. The *Tenneco* case has been followed by the Fourth Circuit in a subsequent opinion. *Smith v. Mirman*, 749 F.2d 181 (4th Cir.1984).

This Court concurs with the *Tenneco* decision. The anti-alienation provisions of ERISA are not limited to benefits payable under the plan from non-beneficiary contributions. The anti-alienation provision extends to all benefits payable under the plan.

■ In these cases, at the time the bankruptcies were filed all of the Debtors had vested benefits under their plans. Ms. Richardson was in a posture just like the employee in the *Tenneco* decision. The plan in which she had an interest had been terminated and she was awaiting distribution from that plan. All had accounts built up from their own contributions which they had the absolute right to withdraw. Nonetheless, whatever they were to receive, all distributions were to be made to them by the plan trustees and would have been benefits payable out of the plans. As such they are fully exempt.

Accordingly, pursuant to the findings and conclusions set forth herein, it is

ORDERED, that the Trustees' objections to the exemptions claimed by these Debtors are denied; and it is

FURTHER ORDERED, that judgment is entered herein in favor of the Debtors finding that all benefits in their respective ERISA qualified pension plans which had accrued as of the date the petitions were

filed are exempt pursuant to 11 U.S.C. § 522(b)(2) and 29 U.S.C. § 1056(d)(2).