**In re Donna Lee DAGNALL, a/k/a Donna Lee Dagnall Fetgatter, Debtor.**

**Bankruptcy No. 86–71507.**

United States Bankruptcy Court, C.D. Illinois.

May 14, 1987.

---

**532**

John H. Squires, Springfield, Ill., trustee.

Robert Barewin, Springfield, Ill., for debtor.

## OPINION

LARRY LESSEN, Chief Judge.

This matter is before the Court on the Trustee's objection to the claimed exemption of the Debtor in her contributions to the State Employees' Retirement System of Illinois. The first issue presented by this objection is whether the state pension plan constitutes property of the estate under 11 U.S.C. Sec. 541(a), or whether it should be considered a spendthrift trust for purposes of 11 U.S.C. Sec. 541(c)(2) and, therefore, excluded from property of the estate. If it is determined that the pension plan is property of the estate, a second issue arises as to whether the Debtor's interest can be claimed as exempt under Ill.Rev.Stat., Ch. 110, Sec. 12–1001 (1985).[1]

The Debtor filed her voluntary petition under Chapter 7 of the Bankruptcy Code on September 3, 1986. In the schedules attached to her petition, the Debtor claimed as exempt her interest in the State Employees Retirement System of Illinois of $4,329.98. This exemption was claimed under Ill.Rev.Stat., Ch. 110, Sec. 12–1001(g)(5) (1985). The Trustee objected to the claimed exemption and a hearing was held on November 24, 1986.

The Debtor is presently employed by the State of Illinois as an assistant attorney general. As a state employee, the Debtor is subject to the state employees retirement system. Ill.Rev.Stat., Ch. 108½, Sec. 14–101 et seq. (1985). Participation in this program is mandatory. Sec. 14–103.05, 14–144. Contributions to the system are made by wage deduction pursuant to a formula set out at Sec. 14–133. The Debtor may only withdraw her contributions in the event of her retirement, disability or termination of state employment. Sec. 14–107, 14–123, 14–124, and 14–130.

Although the State Employees' Retirement System of Illinois does not qualify for tax-exempt status under the Employee Retirement Income Security Act of 1974 (ERISA), it does contain many of the features of an ERISA qualified plan. For example, Sec. 14–133.1 provides for the employer pickup of employee contributions. Thus, employee contributions to the system are not included in the gross income of the employee until such time as the contributions are distributed or made available. *See*, 26 U.S.C. Sec. 414(h). In addition, the retirement system is similar to an ERISA plan because the benefits under the plan may not be assigned or alienated. Sec. 14–147 provides that all benefits under the retirement system "shall be unassignable and shall not be subject to execution, garnishment or attachment, except that a person receiving an annuity or benefit may authorize withholding from such annuity or benefit in accordance with the provisions of the 'State Salary Withholding Act' ".

▮ 11 U.S.C. Sec. 541(a) provides that the filing of a Chapter 7 bankruptcy peti-

---

**1.** 11 U.S.C. 522(b)(1) permits states to forbid their residents from using the federal exemption provided under Sec. 522(d). Illinois opted out of the federal exemptions on July 1, 1982, when Ill.Rev.Stat., Ch. 110, Sec. 12–1201 went into effect. Therefore, Illinois debtors may only exempt property that is exempt under state or local law that is applicable on the date of the filing of the petition.

tion creates an estate comprised of "all legal and equitable interests of the debtor in property as of the commencement of the case". An exception to this general rule is contained in Sec. 541(c)(2), which provides:

A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

The question of whether a retirement plan is excluded from property of the estate has generated substantial litigation in the past few years. Not surprisingly, the Courts have reached divergent results.

Some Courts have held that all ERISA qualified pension plans with anti-alienation and anti-assignment clauses are excluded from becoming property of the estate pursuant to Sec. 541(c)(2). *In re Ralstin,* 61 B.R. 502 (Bankr.D.Kan.1986); *Warren v. G.M. Scott & Sons,* 34 B.R. 543 (Bankr.S.D. Ohio 1983); *In re Pruitt,* 30 B.R. 330 (Bankr.D.Colo.1983) [2]; *In re Threewitt,* 24 B.R. 927 (D.Kan.1982); *In re Holt,* 32 B.R. 767 (Bankr.E.D.Tenn.1983); *In re Rogers,* 24 B.R. 181 (D.Ariz.1982). Since the language of Sec. 541(c)(2) does not contain any reference to the term "spendthrift," these cases hold that the traditionally accepted definition of the term "spendthrift" is not relevant to the exclusion of Sec. 541(c)(2). Therefore, these cases do not consider the nature of the trust under local law. Instead, they read Sec. 541(c)(2) to include all trusts, including ERISA trusts, which bar creditors from reaching the debtor's interest.

At the other extreme is a line of cases which holds that all qualified pension plans are part of the bankruptcy estate. *In re Graham,* 726 F.2d 1268 (8th Cir.1984); *In re Flygstad,* 56 B.R. 884 (Bankr.M.D.Iowa 1986); *In re DeWeese,* 47 B.R. 251 (Bankr. W.D.N.Car.1985); *Matter of Kelley,* 31 B.R. 786 (Bankr.N.D.Ohio 1983). These cases note that the federal exemption scheme of Sec. 522(d) includes an exemp-

tion for pension plans. They reason that this inclusion of an exemption for pensions indicates that pensions were intended to be part of the estate.

The majority of cases have held that Sec. 541(c)(2) was intended to protect only a debtor's interest in traditional spendthrift trusts. *In re Daniel,* 771 F.2d 1352, 1360 (9th Cir.1985); *In re Lichstrahl,* 750 F.2d 1488, 1490 (11th Cir.1985); *In re Goff,* 706 F.2d 574 (5th Cir.1983); *Matter of Lawson,* 67 B.R. 94, 97 (Bankr.M.D.Fla.1986); *In re Wallace,* 66 B.R. 834, 840 (Bankr.E.D.Ma. 1986); *In re Kerr,* 65 B.R. 739, 744 (Bankr. D.Utah 1986); *In re West,* 64 B.R. 738 (Bankr.D.Or.1986); *In re Crenshaw,* 51 B.R. 554, 556–57 (N.D.Ala.1985); *In re Matteson,* 58 B.R. 909, 911 (Bankr.D.Colo. 1986); *In re Huff,* 42 B.R. 553, 556 (Bankr. N.D.Ill.1984); *In re Kwaak,* 42 B.R. 599, 602 (Bankr.D.Maine 1984); *In re DiPiazza,* 29 B.R. 916, 918 (Bankr.N.D.Ill.1983). These cases rely on the legislative history of Sec. 541(c)(2) which indicates that Congress intended the subsection to exclude only traditional spendthrift trusts created under state law.

After reviewing these cases, this Court concludes that Congress intended to limit the Sec. 541(c)(2) exclusion to trusts which have been traditionally recognized under local law as true "spendthrift trusts". The legislative history to Sec. 541(c)(2) makes this intention clear. It states that Sec. 541(c)(2) intended to preserve "restrictions on transfer of a spendthrift trust to the extent that the restriction is enforceable under applicable nonbankruptcy law". H.R.Rep. No. 595, 95th Cong., 2d Sess. 369, reprinted in 1978 U.S.Code Cong. & Ad. News 5787, 5963, 6325. Because of this explicit Congressional intent, this Court has previously rejected the line of cases holding that all pension plans are excluded from property of the bankruptcy estate. *In re Sundeen,* 62 B.R. 619, 620 (Bankr.C. D.Ill.1986). *See, In re Kochell,* 732 F.2d 564, 566, n. 3 (7th Cir.1984) ("[M]ost, if not all, pension plan funds are included in the

---

**2.** Judge Clark subsequently reconsidered her position on this issue in *In re Matteson,* 58 B.R. 909 (Bankr.D.Colo.1986). After reviewing the recent appellate decisions on this issue, Judge Clark determined that *Pruitt* was erroneously decided, and held that Sec. 541(c)(2) was intended to apply only to a spendthrift trust which is enforceable under state law. 58 B.R. at 911.

estate"). Moreover, the Court now rejects the rationale adopted in *Graham.* Contrary to *Graham,* holding that pension plans that are enforceable under state spendthrift law are excludable from the estate does not relegate the pension exemption to mere surplussage. As recognized in *In re West, supra,* 64 B.R. at 742, the pension exemption "covers a broad array of employment benefits as well as pension plans, and provides an exemption for both qualified and unqualified pension plans. There will be instances where ERISA plans will be included in the estate because they do not qualify as enforceable spendthrift trusts under state law, either because that state does not enforce spendthrift provisions or because the provision is invalid. In these instances ... [the pension exemption] will be utilized to exempt pension assets ..." For these reasons, the Court joins the Courts which have held that pension plans are excluded from the bankruptcy estate only if they are enforceable under state law as spendthrift trusts.

■ The Court now turns to the question of whether the State Employees' Retirement System of Illinois qualifies as a spendthrift trust under Illinois law.

Illinois has long recognized the validity of spendthrift trusts. *Wagner v. Wagner,* 244 Ill. 101, 91 N.E. 66 (1910); *Newcomb v. Masters,* 287 Ill. 26, 32, 122 N.E. 85 (1919); *Geiger v. Geer,* 395 Ill. 367, 376, 69 N.E.2d 848 (1946). In general, a spendthrift trust is a trust created with the view of providing funds for the maintenance of another, and at the same time securing the beneficiary against his own improvidence or incapacity for self-protection. The beneficiary's interest is neither transferable by the beneficiary nor leviable by creditors. Thus, in order to establish the State Employees' Retirement System of Illinois as a spendthrift trust under Illinois law, the Debtor must show that she cannot alienate her interest in the trust res, and that she does not possess exclusive and effective control over termination or distribution. *In re Sundeen, supra,* 62 B.R. at 620; *Matter of Rolfe,* 34 B.R. 159, 161 (Bankr.N. D.Ill.1983).

Under the State Employees' Retirement System of Illinois, the Debtor is entitled to receive a refund of her contributions to the System upon termination of employment with the State of Illinois. Ill.Rev.Stat., Ch. 108½, Sec. 14–130. Thus, the Debtor may reach her retirement system contributions at any time by terminating her employment with the State. This dominion and control over the trust corpus violates a true spendthrift trust's prohibition against voluntary alienation of any part of the trust's corpus. *In re Werner,* 31 B.R. 418, 421 (Bankr.D. Minn.1983). Therefore, the State Employees' Retirement System of Illinois does not qualify as a true spendthrift trust under Illinois law.

This conclusion is supported by three recent Illinois bankruptcy court decisions. In *In re Sundeen, supra,* the KEOGH plan in question provided for the payment of benefits to the debtor upon termination of employment. The Court noted that if the debtor's interest in the pension plan was determined not to be part of the bankruptcy estate, the debtor could quit her job and receive a substantial sum of money for her immediate disposal, free and clear of all claims or other interests. Accordingly, the Court held that the plan lacked the safeguards found in a true spendthrift trust and was therefore property of the bankruptcy estate.

In *In re DiPiazza, supra,* both the debtor and his employer contributed to the pension plan. The debtor could withdraw his contributions at any time, but such early withdrawal would result in the forfeiture of the deferred retirement benefits contributed by the employer. Since the debtor could reach the pension plan contributions at any time, the Court found that the plan did not comport with a true spendthrift trust prohibition against voluntary alienation of a trust's corpus. While recognizing that the debtor's forfeiture of the debtor's deferred retirement benefits evidenced a lack of dominion and control on behalf of the debtor, the Court nevertheless concluded that the pension plan was not a traditional spendthrift trust as contemplated by Sec. 541(c)(2). 29 B.R. at 922.

Similarly, in *Matter of Rolfe*, 34 B.R. 159 (Bankr.N.D.Ill.1983), the debtor had an absolute right to withdraw a certain portion of a testamentary trust. The Court found that this property which the debtor had the "unfiltered ability to possess and own" was not protected by the exclusionary language of Sec. 541(c)(2). 34 B.R. at 161.

These cases, and the case at bar, are readily distinguishable from *In re Crenshaw*, 51 B.R. 554 (N.D.Ala.1985), where the Court held that an ERISA qualifying pension plan qualified as a spendthrift trust under Illinois law because the debtor did not have an unqualified right to receive benefits under the plan. The debtor had not made any contributions to the plan. Moreover, he could not receive funds upon the termination of his employment without the cooperation of the plan's trustees. Since he could not reach the trust without his employer's permission, the Court found that he did not have guaranteed access to the funds. 51 B.R. at 588. In the instant case, the Debtor has an absolute right to a refund of her contributions to the system upon the termination of her employment. She does not need her employer's permission to receive these funds. This absolute right of the Debtor to withdraw her contributions to the system upon her termination of employment distinguishes this case from *Crenshaw*, and makes it more analogous to *Sundeen, DiPiazza*, and *Rolfe*. The Court follows these latter cases in holding that the Debtor's interest in the State Employees' Retirement System of Illinois is part of the bankruptcy estate.

The second issue before the Court is whether the Debtor's interest in the pension plan is exempt under Ill.Rev.Stat., Ch. 110, Sec. 12–1001(g)(5). This section exempts a debtor's right to receive a payment under a pension plan "to the extent necessary for the support of the debtor and any dependent of the debtor".

The determination of what funds are reasonably necessary for support is a factual determination. *In re Kochell, supra*, 732 F.2d at 566. Factors which the Court may consider in making this determination include the Debtor's age, health, future earn-ings capacity, and necessary expenditures. *In re Kerr, supra*, 65 B.R. at 746. The *Kochell* Court observed that courts generally deny the exemption "where the debtor is relatively young and has a present earning capacity". *In re Kochell, supra*, 732 F.2d at 565. The burden of proof on the issue of necessity rests upon the Debtor. *In re Sundeen, supra*, 62 B.R. at 620.

The Debtor is presently employed as an assistant attorney general. She has one dependent, a four year old boy. At the relatively young age of 35, and with no permanent disability, she has many years of gainful employment to look forward to. Her salary of over $40,000.00 a year is substantial, especially compared to most post-petition debtors. Her post-petition income comfortably exceeds her post-petition expenses. Any future need is speculative. The circumstances which propelled this Debtor into bankruptcy—a difficult divorce and the assumption of the marital debts— are not likely to repeat themselves. There is nothing in the record to suggest that the Debtor's financial situation will not improve after the case is closed. There is no reason why post-petition contributions to the retirement plan and future income cannot adequately provide for the retirement needs of the Debtor. *In re Kochell, supra*, 732 F.2d at 566; *In re Loe*, 63 B.R. 259, 261 (Bankr.D.Minn.1986); *In re Wilson*, 54 B.R. 796, 799 (Bankr.E.D.Mo.1985); *In re Clark*, 18 B.R. 824 (Bankr.E.D.Tenn.1982). Accordingly, the Court finds that the Debtor's contributions to the State Employees' Retirement System of Illinois are not necessary to the support of the Debtor or her dependent.

For the foregoing reasons, the Trustee's objection to the Debtor's claim of exemption is sustained.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.