In re Jerome Neal BOGGESS and Paula Jean Boggess, Debtor(s),

Cindy Sue BOGGESS, Plaintiff,

v.

Jerome Neal BOGGESS and Paula Jean Boggess, Defendants.

Bankruptcy No. 89–40226.
Adv. No. 89–0095.

United States Bankruptcy Court,
S.D. Illinois.

Sept. 26, 1989.

Terry Sharp, Mt. Vernon, for plaintiff.

Richard Kruger, Metropolis, for defendants.

## MEMORANDUM AND ORDER

KENNETH J. MEYERS, Bankruptcy Judge.

In July 1988 a judgment dissolving the marriage of plaintiff, Cindy Sue Boggess, and defendant Jerome Boggess was entered following a contested hearing on the issues of child support, maintenance, and property division. Defendant remarried, and, on March 13, 1989, he and his present wife filed a petition in bankruptcy under Chapter 7. Plaintiff has filed a complaint in debtors' bankruptcy proceeding objecting to the dischargeability of certain obligations arising from the judgment of dissolution, and debtors have filed a motion to avoid a judicial lien imposed pursuant to this judgment. Plaintiff additionally objects to debtors' claim of exemption in homestead property and pension benefits.

By its judgment, the state court made an award of child support to plaintiff, finding that plaintiff "lacks sufficient income and resources, including the contemplated apportioned marital property, to provide for the minor child's reasonable needs" according to the standard enjoyed during the marriage. The court expressly found, however, that plaintiff and defendant "each has sufficient income and property to support themselves so that neither requires maintenance from the other" and provided that plaintiff and defendant were barred from ever claiming maintenance from each other.

In making its division of marital property, the court awarded the marital residence, the parties' largest asset, to defendant "free and clear of any interest of the plaintiff thereto" and required defendant to assume the debt on this property. The court divided the balance of the marital property and apportioned the marital debts between the parties. The court ruled, however, that

> in order to make a fair and equitable distribution of the assets and debts, defendant shall be ordered to pay plaintiff

three thousand five hundred dollars ($3,500.00).... Plaintiff will have a lien against the real estate for the payment of the money.

Finally, having "considered all of the relevant facts and circumstances of the parties, including the financial resources of the parties and the property and maintenance dispositions set forth ...," the court ordered defendant to pay $1,000 toward plaintiff's attorney fees and costs.

Plaintiff subsequently filed a post-trial motion in the dissolution action in which she alleged that defendant had threatened to declare bankruptcy in order to discharge debts owing to plaintiff under the dissolution judgment. Plaintiff prayed that the court modify its judgment to declare the $3,500 payment and the $1,000 attorney fee, as well as an appropriate amount of the marital debts apportioned to defendant, to be an order in the nature of maintenance so that defendant could not thwart the court's distributive scheme by virtue of the bankruptcy provisions. The state court denied plaintiff's post-trial motion.

Following debtors' bankruptcy filing, plaintiff filed a "supplemental" post-trial motion in the state court in which she again sought modification of the dissolution judgment. Plaintiff observed that the court had considered the award of marital property in denying maintenance and alleged that, by reason of the bankruptcy, she would be "deprived of the distribution of marital property that the court relied upon in denying maintenance to the plaintiff." No ruling has been made on this motion because of the pendency of debtors' bankruptcy.

Plaintiff has now filed a complaint to determine dischargeability in debtors' bankruptcy proceeding, seeking a determination that defendant's obligation under the dissolution judgment to assume marital debts and hold plaintiff harmless and his obligation to pay plaintiff $3,500 are nondischargeable under § 523(a)(5) as being in

the nature of alimony, maintenance, or support.[1] Defendants assert that these obligations are part of the state court's property division and, therefore, are not excepted from discharge under § 523(a)(5).

■ A provision in a judgment of dissolution ordering a spouse to hold the other harmless on a debt incurred during the marriage may be in the nature of maintenance and support or may be in the nature of a property disposition. *In re Calisoff*, 92 B.R. 346 (Bankr.N.D.Ill.1988). Whether such a debt is a property or support obligation is determined under federal bankruptcy law, not state law, and the bankruptcy court is not bound by labels the state court places on its award. *In re Cockhill*, 72 B.R. 339 (Bankr.N.D.Ill.1987); *see* 11 U.S.C. § 523(a)(5)(B). In making this determination, however, the bankruptcy court must attempt to effectuate the state court's intent and must examine the court's order making the award to ascertain this intent. *In re Calisoff*; *In re Cockhill*.

■ In this case, the court's order clearly expressed its intent to deny maintenance to either party. Rather than constituting an award of maintenance, the apportionment of marital debts was included as part of the court's property division, and the court found that the parties had sufficient property and income to support themselves without maintenance. In addition, the award of $3,500 to plaintiff was expressly made in order to approximate an equal property division between plaintiff and defendant, and the court's order contains no indication that it was to serve a support function.

Plaintiff notes that the court's award of child support was based in part on its apportionment of marital property and argues that the judge might have provided higher support payments had he contemplated that the obligations imposed under the dissolution judgment would be discharged in bankruptcy. It is the character

---

1. Section 523(a)(5) provides that a debtor is not discharged from a debt

    (5) to a spouse, former spouse, or child of the debtor, for alimony to, maintenance for, or

support of such spouse or child, in connection with a separation agreement, divorce decree or other order of a court of record....
11 U.S.C. § 523(a)(5).

of an obligation at the time it was created that controls, however, and this Court cannot sit as a divorce court reviewing the obligation to see if, at the time of the bankruptcy, the payment is in fact necessary for support. *Boyle v. Donovan*, 724 F.2d 681 (8th Cir.1984). The state court, moreover, was given an opportunity through plaintiff's post-trial motion to modify its judgment in light of defendant's contemplated bankruptcy, and it declined to change the terms of the judgment as proposed by plaintiff. This Court finds, therefore, that defendant's obligation to hold plaintiff harmless in the payment of marital debts and his obligation to pay plaintiff $3,500 do not constitute awards in the nature of support so as to be excepted from discharge under § 523(a)(5).

Plaintiff additionally contends that defendant's obligation to pay $1,000 of plaintiff's attorney fees in the dissolution proceeding is nondischargeable as being in the nature of support. The court's award of attorney fees was made pursuant to Ill. Rev.Stat., ch. 40 ¶ 508, which provides that a court may order payment of attorney fees by the other spouse "after considering the financial resources of the parties." In Illinois, the controlling consideration in determining whether to grant attorney fees is the relative financial resources of the parties, and an award of attorney fees is based on a showing of the inability of one spouse to pay and the ability of the other spouse to do so. *In re Cockhill.* Given these standards as set forth in the statute and as developed in Illinois case law, an award of attorney fees is ordinarily in the nature of support. *Cockhill.*

■ Generally, the dischargeability of attorney fees depends on whether the debt to which the fees relate is dischargeable. *In re Sposa*, 31 B.R. 307 (Bankr.E.D.Va. 1983). In the instant case, the state court awarded only a portion of the attorney fees incurred by plaintiff in the dissolution proceeding. While fees related to the court's division of property would be dischargeable, the court also made an award of child support based on plaintiff's inadequate financial resources, and the fees related to

this nondischargeable award of support would be nondischargeable as well. Based on the statutory standards for awarding attorney fees and the relation of the fees to the child support award, the Court finds that the $1,000 attorney fee award to plaintiff is a debt in the nature of support and thus nondischargeable.

■ Because the court in the dissolution judgment imposed a lien on the real estate awarded to defendant to secure the $3,500 payment to plaintiff, the Court must further consider whether this lien may be avoided by debtors under § 522(f)(1). Section 522 provides:

> (f) [T]he debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled ..., if such lien is—
>
> (1) a judicial lien....

Debtors allege that the lien imposed by the dissolution judgment impairs their exemption in homestead property provided under state law. See Ill.Rev.Stat., ch. 110, ¶ 12–901. In their schedules, debtors have each claimed an exemption of $7,500 in homestead property, for a total exemption of $15,000. Plaintiff objects to this claim, contending that debtor Paula Boggess is not entitled to claim an exemption in the homestead property because she does not hold title to this property. Plaintiff further disputes the valuation that debtors have placed on the homestead property and asserts that the lien does not impair the $7,500 exemption to which debtor Jerome Boggess is entitled because there is sufficient equity in the home to encompass both the homestead exemption and the lien imposed by the dissolution judgment.

In March 1989 when debtors filed their bankruptcy schedules, they listed the value of the homestead property as $50,000. At trial debtors introduced appraisal testimony to the effect that the value of the homestead was $46,000. Plaintiff asserts that both valuations are incorrect and that the correct value should be $54,000 as found by the state court in its dissolution judgment. It is undisputed that the amount of the

mortgage on the home at the time of the bankruptcy filing was $43,133.02.

Neither the estimated value used by debtors in preparing their bankruptcy schedules nor the valuation placed on the home in the state court dissolution judgment is binding on debtors in determining the value of the property for purposes of their motion to avoid lien. *See generally* 3 *Collier on Bankruptcy,* § 521.08[2] (15th ed. 1989): admission in schedule filed in bankruptcy proceeding, like other admissions, may be corrected or explained by debtor and is not *res judicata* either as to creditors or the debtor. At trial debtor presented evidence that the market value of the house had declined because of structural damage in the basement that had become noticeably more severe since the property was appraised for the dissolution proceeding in May 1988. Debtors' appraiser further testified that the value of the house as of March 1989, the date of the bankruptcy filing, was $46,000. In the absence of any contrary evidence by plaintiff, the Court finds that debtors have sustained their burden of proof in establishing the value of the house at $46,000.

With this valuation, it can be seen that there is insufficient equity in the home above the amount of the mortgage to allow for plaintiff's lien of $3,500 in addition to the $7,500 homestead exemption of debtor Jerome Boggess. Since the equity is less than the $7,500 exemption to which Jerome Boggess is entitled, it is unnecessary to consider whether Paula Boggess may claim an additional homestead exemption if she does not hold title to the property.[2] Finding that plaintiff's lien impairs an exemption to which debtor Jerome Boggess would have been entitled, the Court must consider whether this lien constitutes a judicial lien that may be avoided under § 522(f)(1).

The issue of avoidability of liens arising from court order in dissolution of marriage proceedings is subject to a split of authority in the federal Circuit Courts of Appeal and, to this Court's knowledge, has not been decided by the Seventh Circuit. Courts holding that such liens constitute avoidable judicial liens look to the Bankruptcy Code definition of a judicial lien as well as to the express language of § 522(f)(1). *See In re Pederson,* 875 F.2d 781 (9th Cir.1989); *Maus v. Maus,* 837 F.2d 935 (10th Cir.1988); *but see In re Donahue,* 862 F.2d 259 (10th Cir.1988); *see also In re Sanderfoot,* 92 B.R. 802 (E.D.Wis. 1988); *In re Duncan,* 85 B.R. 80 (W.D.Wis. 1988). Other courts, concerned with the inequity of allowing an ex-spouse to avoid a lien arising from a divorce decree, employ various theories to uphold such liens. *In re Worth,* 100 B.R. 834 (Bankr.N.D.Tex. 1988). One such theory is that the lien imposed by the state court does not attach to an interest of the debtor spouse in exempt property, but rather protects a "pre-existing interest" of the lien-holding spouse that was created under state law prior to the marriage dissolution. *In re Boyd,* 741 F.2d 1112 (8th Cir.1984); *Zachary v. Zachary,* 99 B.R. 916 (S.D.Ind.1989). These courts also decline to give the term "judicial lien" a literal interpretation, finding that this is contrary to legislative intent and that "to label [a lien arising from a dissolution action] a judicial lien merely because it is a lien which was imposed in a judicial proceeding puts form over substance." *Zachary v. Zachary,* 99 B.R. at 920, *quoting Boyd v. Robinson,* 31 B.R. 591, 595 (D.Minn.1983); *see In re Worth.*

The Court finds the reasoning of these latter cases to be strained and instead adopts the position of the *Pederson* line of cases that the Code provisions must be given their plain meaning despite the seemingly inequitable results in a divorce setting. Section 101(32) of the Code defines "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32). Likewise, "lien" is defined as a "charge against or interest in property to secure payment of a debt or performance of an obligation." 11 U.S.C. § 101(33).

---

2. The question of whether an untitled spouse may claim a separate homestead exemption is unsettled in Illinois. For two conflicting views, see *In re Owen,* 74 B.R. 697 (Bankr.C.D.Ill.1987) and *Matter of Reuter,* 56 B.R. 39 (Bankr.N.D.Ill. 1985).

The lien in the instant case was created by judgment as required by § 101(32) and is a "charge against" property awarded to debtor Jerome Boggess to secure payment of the $3,500 debt owed to plaintiff. As in *Pederson,* the dissolution judgment awarded title to the homestead property outright, "free and clear of any interest of plaintiff thereto." Thus, plaintiff's interest in the property was extinguished by the dissolution judgment, and, since she had no continuing interest in the property, her lien necessarily attached to debtor's interest as required by § 522(f)(1). *In re Pederson.*

The Court finds that plaintiff's lien satisfies the conditions of § 522(f)(1) for avoidability of a judicial lien. Regardless of its own perceptions of fairness, the Court must give effect to the policy decisions embodied in the express language of Code provisions. *See In re Pederson.* Having found that plaintiff's lien impairs debtor's homestead exemption to which he is entitled under state law, the Court will sustain debtors' motion to avoid plaintiff's lien in its entirety.

The final matter at issue is plaintiff's objection to an exemption claimed by debtor Jerome Boggess in pension benefits provided through his employer, Electric Energy, Inc. In his bankruptcy petition, debtor claimed the entire amount of the pension as exempt pursuant to Ill.Rev.Stat., ch. 110, ¶ 12–1001(g)(5). This section exempts a debtor's right to receive a payment under a pension plan "to the extent necessary for the support of the debtor and any dependent of the debtor." In addition, debtors claimed an exemption in the pension interest under the "wild card" provision allowing an exemption of $2,000 in "any other property" of the debtor. Ill.Rev.Stat., ch. 110, ¶ 12–1001(b).

Debtor testified at trial that his interest in the pension plan was not vested and that the only way he could withdraw his contributions to the plan would be through cessation of employment or death. At the time of the bankruptcy filing, debtor's total contributions to the plan were approximately $2,200 or $2,300. Taking into account the other personal property claimed as exempt under the "wild card" exemption, debtor could exempt $1,950 of the value of the pension under that exemption. The Court must decide, therefore, whether the amount of the pension interest that is not covered by the "wild card" exemption is necessary for the support of debtor and his dependents so as to be exempt under ¶ 12–1001(g)(5).

The determination of what funds are reasonably necessary for support is a factual determination, and the court may consider such factors as the debtor's age, health, future earning capacity, and necessary expenditures in making this determination. *In re Dagnall,* 78 B.R. 531 (Bankr. C.D.Ill.1987). Where the debtor is relatively young and has a present earning capacity, the exemption is generally denied. *Dagnall.* In the instant case, debtor is 39 years old and in good health. He is employed as an assistant supervisor at an electric utility company and makes a salary in excess of $40,000 a year. His wife and co-debtor supplements this income in her employment as a private duty nurse.

Debtor is presently paying child support for four children from two previous marriages. While this is a substantial burden, debtor has many years of future employment to look forward to, and his retirement needs may be adequately provided for by post-petition contributions to his pension plan. The Court finds, therefore, that debtor's interest in the pension plan above the amount of the "wild card" exemption is not necessary for the support of debtor or his dependents so as to be exempt under ¶ 12–1001(g)(5) and, accordingly, sustains plaintiff's objection to this exemption.

To summarize, the Court finds that the debts resulting from the state court dissolution judgment are dischargeable by debtors except for the debt to attorney Joseph Jackson, which is nondischargeable. Further, the Court sustains debtors' motion to avoid plaintiff's lien from the dissolution judgment in the amount of $3,500. Plaintiff's objection to the homestead exemption claimed by debtor Paula Boggess is dismissed as moot, and plaintiff's objection to the exemption in debtor Jerome Boggess'

pension plan is sustained as to the amount not covered by the "wild card" exemption.

IT IS ORDERED that the relief sought in plaintiff's complaint objecting to discharge is DENIED in part and GRANTED in part; debtors' motion to avoid lien is SUSTAINED; plaintiff's objection to the homestead exemption is DISMISSED; and plaintiff's objection to the pension plan exemption is SUSTAINED in part.