**In re Joseph R. MACYS, Debtor.**

**Bonnie S. MACYS, Plaintiff,**

v.

**Joseph R. MACYS, Defendant.**

**Murray J. JANUS, Plaintiff,**

v.

**Joseph R. MACYS, Defendant.**

**Bankruptcy No. 88–01180–RT.**

**Adv. Nos. 88–0288–RT, 88–0289–RT.**

United States Bankruptcy Court,
E.D. Virginia,
Richmond Division.

June 22, 1990.

Murray J. Janus, Bremner, Baber & Janus, Richmond, Va., for plaintiffs.

William C. Parkinson, Jr., Richmond, Va., for defendant/debtor.

## MEMORANDUM OPINION

DOUGLAS O. TICE, Jr., Bankruptcy Judge.

### Summary

These adversary proceedings involve the dischargeability under 11 U.S.C. § 523(a)(5) of two monetary judgments awarded in divorce litigation against the debtor in favor of Bonnie Macys, his former spouse: (1) an award in the amount of $112,270.00 under the equitable distribution statute of Virginia,[1] and (2) an award for Ms. Macys' attorney fees in the amount of $5,120.85.

Two dischargeability complaints were filed, one by Ms. Macys as to both debts and one by her attorney for the attorney fee. In his answer, the debtor asserted a counterclaim against Ms. Macys which sought an offset against the equitable distribution indebtedness. Consolidated trial was held on the two complaints and counterclaim.

Based upon the findings and conclusions stated in this opinion, the Court makes the following rulings:

(1) The monetary award judgment for equitable distribution represents payment for property and is therefore not excepted from discharge.

(2) The attorney fee award in favor of Bonnie S. Macys is in the nature of support and is excepted from discharge. However, since this award was to the spouse and not to her attorney, the plaintiff attorney's complaint will be dismissed.

(3) The court's ruling on the monetary award precludes the necessity for the court to consider the debtor's counterclaim, and for this reason the counterclaim will be denied.

### Facts

INTRODUCTION.

The facts in these adversary proceedings have been substantially stipulated and are based upon the record of a divorce suit filed by Ms. Macys in the Circuit Court of Henrico County, Virginia, in May 1985. By a decree of reference the circuit court initially referred the issues raised in this suit to a commissioner in chancery to conduct necessary evidentiary hearings and report recommended findings of fact and conclusions of law to the circuit court.[2] The report of the commissioner in the Macys divorce suit was filed with the Circuit Court on October 3, 1986; the report was adopted by final decree of the circuit court entered April 3, 1987, which awarded the judgments at issue here. The circuit court's decree was affirmed on appeal by the Virginia Court of Appeals. Joseph Macys filed his chapter 7 bankruptcy petition on May 27, 1988.

The commissioner's report, which responded to twelve inquiries set out in the decree of reference, provided the circuit court all findings necessary under Virginia law for the court to enter a divorce decree and to provide appropriate monetary awards of child and spousal support (or alimony), and an equitable distribution with respect to the parties' property and attorney fees.[3]

The report of the commissioner in chancery also contains the evidence necessary

---

1. *See* Va.Code Ann. § 20–107.3 (Cum.Supp. 1989). Throughout this opinion the court will cite the current version of the statute except where the current version differs from the form of the statute enacted at the inception of the state court proceeding. In those circumstances the court will refer to the earlier version.

2. Virginia maintains common law distinctions between law and equity. It is customary, particularly in complex divorce cases, for the circuit court to refer the issues to a commissioner in chancery who serves as a special master in the case and reports to the court.

3. The Virginia equitable distribution statute does not permit the divorce court to transfer property held in the name of one spouse to the other spouse even if it is marital property. However, the court may give the other spouse a monetary award in respect of all marital property. Va.Code Ann. § 20–107.3 (Cum.Supp. 1989).

for a ruling on the bankruptcy discharge-ability issues. Accordingly, my findings of fact include the commissioner's report and the decree of the circuit court.[4]

At trial of the consolidated adversary proceedings before this court, the only evidence received aside from the stipulated divorce case record was related to the counterclaim asserted by the debtor against Ms. Macys. My ruling on the principal issue avoids the necessity to consider the counterclaim, and no findings of fact on this issue are included.

CIRCUIT COURT FINDINGS—BACK-GROUND.

Joseph and Bonnie Macys were married on March 25, 1969, in Cleveland, Ohio; they have two children who were both minors in 1986. Bonnie Macys holds college degrees in nursing and in English. Joseph Macys, a medical doctor, graduated from the medical school of Ohio State University in 1961. The parties moved to Richmond, Virginia, in 1973 or 1974, and Dr. Macys became a successful specialist in orthopaedic surgery.

In June 1982, Dr. Macys was hospitalized with chest pain, and it was discovered that he had a 95 percent blockage of an artery. This problem was not alleviated by treatment, and subsequently Dr. Macys suffered congestive heart failure and underwent emergency bypass heart surgery. However, the surgery did not resolve his cardiac problems, and he again suffered heart failure in March 1983. Dr. Macys' heart condition seriously restricted his ability to practice medicine. At the time of the hearings before the commissioner, Dr. Macys was engaged in a limited medical practice but could no longer practice in his surgical specialty.

The parties' financial history reveals that Ms. Macys worked as a nurse early in the marriage and during the residency and training of Dr. Macys. After starting his orthopaedic practice in Richmond, Dr. Ma-cys enjoyed an excellent annual income through 1982. After Dr. Macys achieved financial success, Ms. Macys' activities were primarily in maintaining their home and raising the children. In this respect she made significant non-financial contributions to the Macys family.

The following schedule reveals how Dr. Macys' professional income was reduced after the onset of his heart condition:

| | |
|---|---|
| 1982 | $200,607.34 |
| 1983 | $ 84,806.50 |
| 1984 | $ 15,760.00 |
| 1985 | $ 13,050.00 |

During these years of reduced income, Dr. Macys also received income from two disability insurance policies.

The parties experienced marital difficulties and separated in 1985, after which their children lived with Ms. Macys.

CIRCUIT COURT FINDINGS—PROPERTY OF THE PARTIES.

The first inquiry of the circuit court's reference required the commissioner in chancery to make detailed findings concerning all property of the parties, including determinations of value. In his report on this inquiry the commissioner first noted that "much" of the parties' property had been sold and the proceeds divided by them prior to the hearings before the commissioner. This included the sale of the Macys' marital residence along with an extra lot for a total price of $480,000.00. (Subsequent to the parties' separation Ms. Macys had purchased her own separate residence for a price of $118,000.00.) The commissioner's report listed and placed values on all remaining marital property which consisted primarily of interests in real property (including a partnership interest of Dr. Macys), racehorses and Dr. Macys' pension and profit sharing plan. Most of these assets were held in the name of Dr. Macys, and in some instances there was significant disagreement as to value. The commissioner determined a total value of the parties' marital property in the amount of $319,292.00.[5]

4. The commissioner's factual determinations were based upon evidence taken in June 1986.

5. This figure does not include the separate residence purchased by Ms. Macys. Nor does it contain any amount for an interest the parties held jointly in beach real property. The commissioner anticipated that this joint property interest would be disposed of subsequently with the proceeds divided by the parties.

CIRCUIT COURT FINDINGS—EQUITABLE DISTRIBUTION AWARD.

Inquiry number 2 of the decree of reference related to the equitable distribution award and stated as follows:

2. Based on the equities and rights and interests of each party in the marital property, and based upon consideration of the factors set forth in § 20–107.3(E), what amount, if any, should either party pay the other as a monetary award, and whether such award shall be payable in a lump sum or over a period of time in fixed amounts.

(Joint Appendix, Vol. I, p. 8)

The commissioner's 12 page response to this inquiry effectively stated the basis adopted by the circuit court for the monetary award judgment here in issue. Under provisions of Va.Code Ann. § 20–107.3(E) effective at the time of the hearing before the commissioner, the court was required to consider 11 listed factors in the determination of an equitable distribution award.[6] In his report the commissioner considered each of these factors in detail as they applied to the Macys. The following is an extract from the commissioner's report in response to factor number 11.

11. Such other factors as to the Court seem necessary or appropriate to consider in order to arrive at a fair and equitable monetary award. [Va.Code Ann. § 20–107.3(E)(11).]

Your Commissioner observes that Mrs. Macys has taken part of the money which was divided under an agreement prior to the hearing and purchased a parcel of real estate to make a home, not only for herself but for the two children of the parties that were born of the marriage.

(Joint Appendix, Vol. II, p. 996)

After considering and discussing the 11 statutory factors related to equitable distribution, the commissioner stated the following conclusion and recommendation for the award.

*Conclusion*

Your Commissioner now must come to grips with whether a monetary award will be made to either of the parties pursuant to Code § 20–107.3(D) after a full consideration of the factors set forth in that statute that have been enumerated hereinbefore.

Your Commissioner reports that the racehorses are titled in the name of Dr. Macys. Additionally, your Commissioner reports that the I.R.A.s are titled in the individual names of the parties, the $1,000.00 I.R.A. in the name of Dr. Macys and the $8,000.00 I.R.A. in the name of Mrs. Macys....[7] Based upon the foregoing, your Commissioner finds and accordingly reports that the plaintiff, Bonnie S. Macys, should receive a monetary award under the provisions of Code § 20–107.3 of $112,270.00. $86,070.00 of such award shall be paid to the plaintiff within six months of the decree of court confirming such award or on final settlement of the sale of the Queen Anne properties, whichever shall first occur.

Your Commissioner finds and accordingly reports further that $26,200.00 of such monetary award is based upon the pension benefits owned by Dr. Macys in his pension and profit sharing plan. This award is made on the basis of your Commissioner's consideration of the factors enumerated in the statute. Your Commissioner finds and accordingly reports that such portion of the monetary award should be paid only from payments to the defendant of retirement and pension benefits actually received by the defendant as and when they are received. 40% of all such payments received by the defendant, shall be paid to the plaintiff until

---

6. The 11 factors are set out in footnote 13, infra.

7. The material deleted is a lengthy statement relating to the jointly owned interest in real property of the Macys. Since the report anticipated the parties would dispose of and divide the proceeds of this realty, it appears the parties' ownership of this property had no bearing on the amount of the monetary award. See footnote 5 *supra*.

the plaintiff receives the sum of $26,-200.00.

(Joint Appendix, Vol. II, pp. 996–98)

CIRCUIT COURT FINDINGS—CHILD AND SPOUSAL SUPPORT.

Under inquiry number 6, the commissioner recommended that Ms. Macys be awarded custody of the infant children of the marriage, and under inquiry number 7 the commissioner recommended that Dr. Macys pay Ms. Macys $900.00 per month in child support, along with dues for a recreation club, medical insurance and medical and dental expenses not covered by insurance.

Inquiry number 8 of the reference decree and the commissioner's response in pertinent part were as follows:

8. What amount, if any, should be awarded to either party as periodic spousal support or as a lump sum of spousal support.

(Joint Appendix, Vol. I, p. 9)

*Response To Inquiry Number 8:*

. . . . .

[Y]our Commissioner finds and accordingly reports that Mrs. Macys has a right to receive marital support from her husband and has a right to be maintained in a manner in which she was accustomed during the marriage, balancing her needs against Dr. Macys' ability to supply these needs. *Lapidus v. Lapidus*, 226 Va. 575 [311 S.E.2d 786] (1984).

Code § 20–107.1 sets out in nine numbered paragraphs the factors that must be considered by your Commissioner in determining support and maintenance for a spouse. Your Commissioner has considered all of these elements, has considered all of the evidence and exhibits, and has considered the briefs filed by both of the parties as they relate to spousal support. In this regard, your Commissioner commends to the court a succinct statement of these factors contained in the brief filed on behalf of the plaintiff and contained on pages 14–21 of that brief.[8] The parties have filed their respective expense statement in evidence (Plaintiff's Exhibit 1; Defendant's Exhibit 14) and your Commissioner notes that Mrs. Macys' statement indicates a

monthly income requirement of $5,005.48 and Dr. Macys' statement indicates a need for $5,651.00. Dr. Macys' gross income, most of which is taxable, is shown on his statement at $9,500.00 a month. The evidence indicates a somewhat higher amount. In determining proper levels of support and maintenance, your Commissioner is keenly cognizant of two factors that will influence this determination in the future. The first is the fact that Dr. Macys, at present, is receiving the sum of $8,500.00 a month as insurance disability payments. $5,000.00 of this sum will terminate in February of 1988. Secondly, Dr. Macys is in the process of pursuing part-time employment consistent with his health. At the time of the hearing, he was employed part-time in a medical office practice. The evidence is also that he had been offered a teaching position that he justifiably did not feel that he could undertake, based upon his medical condition. As time passes, and Dr. Macys becomes stronger, it is, in all likelihood, probable that he can spend greater time and effort in some medically related endeavor which will increase his income from employment. These circumstances would certainly constitute a change in the present posture of the case upon which your Commissioner's report is based.

Having considered the factors set forth in § 20–107.1, your Commissioner finds and accordingly reports that the defendant should pay to the plaintiff, Bonnie S. Macys, the sum of $1,400.00 per month as marital support and maintain hospitalization insurance coverage on her.

(Joint Appendix, Vol. II, p. 1001–3)

CIRCUIT COURT FINDINGS—ATTORNEY FEES.

Under inquiry number 11 the commissioner was directed to make a finding of whether either party should recover attorney fees from the other. The following is an extract from the commissioner's response:

Your Commissioner is cognizant of the fact that Mrs. Macys has received and

8. This brief was not part of the record before the bankruptcy court.

will receive substantial assets which were accumulated during the marriage, and your Commissioner is of the opinion that it is not reasonable for Dr. Macys to be required to bear all of her counsel fees and the costs of this litigation. The evidence is that the legal matters involved in this case have been complex and many of the issues have been hotly contested. In addition to hearings in court, your Commissioner heard evidence for the better part of four days during which time both parties had two attorneys representing them. Through skillful legal representation, the parties have been able to reach agreements on the disposition of the parties marital property.

... Your Commissioner finds and accordingly reports to the court that it is reasonable that Mrs. Macys should pay 65% of the attorney's fees incurred by her and that the defendant should contribute 35% toward the payment of all reasonable attorney's fees incurred by the plaintiff....

(Joint Appendix, Vol. II, p. 1006–7)

The amount of attorney fee ultimately awarded against the debtor in favor of Ms. Macys was $5,120.85.

### Discussion And Conclusions

The parties Bonnie S. Macys and Joseph R. Macys were divorced by a Virginia circuit court decree. In the divorce suit, the parties contested issues of spousal and child support and property settlement. Extensive evidentiary hearings were held before a commissioner in chancery whose report of the facts and ultimate recommendations was adopted by the circuit court. Based on these findings the divorce decree ordered the debtor Joseph Macys to pay monthly child and spousal support, plus an equitable distribution monetary award of $112,170.00 and $5,120.85 of Ms. Macys' attorney fees.

There are two components to the circuit court's equitable distribution award against the debtor. The sum of $26,200.00 repre-sented payment for Dr. Macys' pension and profit sharing plan and was to be paid to Ms. Macys only as the debtor received payments from the plan. The circuit court ordered the debtor to pay the balance of the award, $86,070.00, which was payment for other property, within six months after the final divorce decree. The separate payment for a pension is required by Va.Code Ann. § 20–107.3(G).[9]

Subsequently, the debtor filed a chapter 7 bankruptcy petition, and this court must determine the dischargeability of the debtor's liability for the equitable distribution and attorney fee awards granted by the divorce court.

The bulk of the evidence here consists of the record in the Macys' divorce suit. My conclusions are based upon facts and findings adopted by the Virginia divorce court, summarized above.

11 U.S.C. § 523(a)(5) excepts from discharge obligations of a debtor to a spouse or former spouse for alimony, maintenance or support arising out of a separation or divorce. It is well established that a debtor's liability which represents a spousal property settlement is not within the exception and is therefore dischargeable. The dischargeability question turns upon whether the "liability is actually in the nature of alimony, maintenance or support" notwithstanding how it is labeled under either an agreement or state court divorce order. 11 U.S.C. § 523(a)(5)(B) (1988).

The troublesome issue with which this court must cope has arisen in countless cases under § 523(a)(5) and results from the fact that the divorce court's monetary awards against the debtor were based upon considerations which are not the same as those raised in bankruptcy. In a divorce, it is not always important to draw a fine line between a payment for support and a payment for property. A review of the facts in these adversary proceedings reveals that neither the commissioner nor the circuit court ever stated or implied that the two awards in question were intended to be support or alimony for Ms. Macys; nor was

---

**9.** Since the evidence before the commissioner in chancery indicated that the debtor had borrowed substantial sums from his plan, an in-debtedness reflected in his bankruptcy schedules, it is at least questionable whether he will ever receive any significant sum from the plan.

it directly specified that the equitable distribution award was intended solely as property settlement.

■ The plaintiff has the burden to prove by a preponderance of the evidence that the debtor's liability should be excepted from discharge under § 523(a)(5). *See Combs v. Richardson*, 838 F.2d 112 (4th Cir.1988); *Seery v. Basham (In re Basham)*, 106 B.R. 453 (Bankr.E.D.Va.1989).

In the Fourth Circuit, opinions of our Court of Appeals give general guidelines for a case by case determination of the dischargeability of this type of liability. *See Long v. West (In re Long)*, 794 F.2d 928 (4th Cir.1986), *Tilley v. Jessee*, 789 F.2d 1074 (4th Cir.1986); *Melichar v. Ost (In re Melichar)*, 661 F.2d 300 (4th Cir.1981), *cert. denied*, 456 U.S. 927, 102 S.Ct. 1974, 72 L.Ed.2d 442 (1982).

■ The nature of a spousal award is based upon the intent of the parties where there is an agreement or as in the instant case upon the intent of the divorce court in making the award. *In re Long*, 794 F.2d at 931.

■ Bankruptcy opinions emphasize that the result turns on bankruptcy law and not state law; the bankruptcy court must make an independent determination of what constitutes alimony, maintenance or support under federal standards. However, there is a tension between this principle and the fact that there is no federal law of domestic relations. Thus, state law labels attached to a spousal obligation, while not

binding, may and should be considered by the bankruptcy court. *See In re Long*, 794 F.2d at 930; *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 877–78 (10th Cir. 1986); *Pauley v. Spong (In re Spong)*, 661 F.2d 6, 8–9 (2nd Cir.1981); *Petoske v. Petoske (In re Petoske)*, 16 B.R. 412, 413–14 (Bankr.E.D.N.Y.1982); *Monday v. Allen (In re Allen)*, 4 B.R. 617, 619–20 (Bankr.E. D.Tenn.1980); 3 King, *Collier On Bankruptcy*, par. 523.15[1], pp. 523–105—523–106 (15th Ed.1989).

Here, since the equitable distribution award against the debtor is based upon a rather technical Virginia statute, this court can hardly ignore the law on which the debt is based or the divorce court's determination. *In re Spong*, 661 F.2d at 9.

The equitable distribution statute, Va. Code Ann. § 20–107.3, was enacted by the Virginia General Assembly in 1982. The Macys' case appears to be one of first impression on the dischargeability of an award under this section based upon extensive considerations of marital property of the parties.[10] Before Virginia adopted equitable distribution, the state's courts had no authority in a divorce suit to require one spouse to pay the other a sum of money based merely upon the spouses' marital property.[11]

In the 1982 legislation, former Va.Code Ann. § 20–107 (*repealed by* Acts 1982, c. 309) was divided into three subsections, the titles of which describe their individual purposes:

**10.** Bankruptcy Judge Hal J. Bonney, Jr., has held that a monetary award under § 20–107.3 of the present value of a wife's portion of the debtor's military retirement pension was in the nature of support and therefore excepted from discharge. *Corrigan v. Corrigan (In re Corrigan)*, 93 B.R. 81 (Bankr.E.D.Va.1988).

**11.** See the Report of the Joint Subcommittee Studying Section 20–107 of the Code of Virginia, January 1982. The following is an extract from this report:

Historical Background

Virginia is currently one of only three states in which the court is given no authority to distribute marital assets between the spouses upon their divorce. West Virginia and Mississippi share our common law approach whereby title to property determines its ownership unless the non-titled spouse can establish an interest through a constructive or resulting

trust. The effect of this system is that generally a spouse can share in marital assets which are not jointly held and are not in his or her name only through the support award. This is the case irrespective of the contributions such spouse may have made over the years to the well-being of the family and to the acquisition of the marital property.

Unfortunately, using the support award as a vehicle for property compensation is defective in a number of ways. The death of an obligor absolutely terminates the support obligation as does the remarriage of the obligee spouse. Also, marital fault serves as a total bar to support for a spouse who may otherwise have made sizeable contributions to the family wealth and prosperity. All too often, the spouse upon whom a support obligation has been placed refuses to comply, necessitating burdensome enforcement suits, assuming the defaulting spouse can be located.

Section 20–107.1. Court may decree as to maintenance and support of spouses.[12]

Section 20–107.2. Court may decree as to custody and support of minor children.

Section 20.107.3. Court may decree as to properties of the parties.

*See* Va.Code Ann. §§ 20–107.1–.3 (Cum. Supp.1989).

These titles notwithstanding, the statute allows for an interrelationship among the three types of awards. In listing a number of factors to be considered by the court in making spousal or child support awards, §§ 20–107.1 and 20–107.2 provide that a property award under § 20–107.3 may be considered. Va.Code Ann. §§ 20–107.1(8), 20–107.2(2)(g) (Cum.Supp.1989). Section 20–107.3 does not state that a spousal or child support award may be considered by the court in making a property award. Instead, § 20–107.3(F) provides:

F. The court shall determine the amount of any such monetary award without regard to maintenance and support awarded for either party or support

The historical trend in this country has been to recognize the inequity inherent under the common law scheme and to provide for some form of equitable property distribution when a marriage is terminated. The fact that almost forty states (excluding eight community property states) have abandoned the Commonwealth's present approach and adopted some form of divorce settlement which acknowledges the partnership status of marriage in indicative of the strength of this movement.
Report of the Subcommittee Studying Section 20–107 of the Code of Virginia to the Governor and the General Assembly of Virginia, Va.H. Doc. No. 21, at 4–5 (1982).

**12.** Spousal maintenance and support are the equivalent of alimony, a term not used in the statute.

**13.** In 1986, at the time of the Macys' divorce suit, § 20–107.1 provided in part as follows:

. . . . .

The court, in determining support and maintenance for a spouse, shall consider the following:
1. The earning capacity, obligations, needs and financial resources of the parties, including but not limited to income from pension, profit sharing or retirement plans;
2. The education and training of the parties and the ability and opportunity of the parties to secure such education and training;

for the minor children of both parties and shall, after or at the time of such determination and upon motion of either party, consider whether an order for support and maintenance of a spouse or children shall be entered or, if previously entered, whether such order shall be modified or vacated.

Va.Code Ann. § 20–107.3(F) (Cum.Supp. 1989).

Section 20–107.3(D) provides that the equitable distribution award is to be

[b]ased upon the equities and the rights and interests of each party in the marital property. . . .

Va.Code Ann. § 20–107.3(D) (Cum.Supp. 1989).

Section 20–107.3(E) lists 11 factors to be considered by the court in making the award. These factors are somewhat similar to and in some instances duplicate those required to be considered for an award of spousal maintenance and support under § 20–107.1.[13]

The Virginia Court of Appeals has considered § 20–107.3 in several decisions.

3. The standard of living established during the marriage;
4. The duration of the marriage;
5. The age and physical and mental condition of the parties;
6. The contributions, monetary and non-monetary, of each party to the well-being of the family;
7. The property interests of the parties, both real and personal, tangible and intangible;
8. The provisions made with regard to the marital property under § 20–107.3; and
9. Such other factors, including the tax consequences to each party, as are necessary to consider the equities between the parties.
Va.Code Ann. § 20–107.1 (Cum.Supp.1985) (current version at Va.Code Ann. § 20–107.1 (Cum. Supp.1989)).
In 1986, § 20–107.3(E) provided:
The amount of the award and the method of payment shall be determined by the court after consideration of the following factors:
1. The contributions, monetary and non-monetary, of each party to the well-being of the family;
2. The contributions, monetary and non-monetary, of each party in the acquisition and care and maintenance of such marital property of the parties;
3. The duration of the marriage;

The court's opinions emphasize that equitable distribution awards represent money judgments for a fair and equitable adjustment of the property interests of the spouses and that pursuant to § 20–107.3(F) the amount is to be determined "without regard to maintenance and support awarded" under §§ 20–107.1 and 20–107.2. *See Reid v. Reid,* 7 Va.App. 553, 375 S.E.2d 533 (1989); *Booth v. Booth,* 7 Va.App. 22, 371 S.E.2d 569 (1988); *Brown v. Brown,* 5 Va. App. 238, 361 S.E.2d 364 (1987); *Brinkley v. Brinkley,* 5 Va.App. 132, 361 S.E.2d 139 (1987); *Williams v. Williams,* 4 Va.App. 19, 354 S.E.2d 64 (1987). As illustrated by the *Reid* and *Williams* decisions, the Virginia courts are still developing the interplay among the three subsections of § 20–107.

The dischargeability of equitable distribution awards under the law of states other than Virginia has been considered by several bankruptcy courts. Because of the nontraditional types of awards which may be produced under equitable distribution statutes, it is not surprising that courts have struggled with this type of award in the context of § 523(a)(5). *See Jenkins v. Jenkins (In re Jenkins),* 94 B.R. 355 (Bankr.E.D.Pa.1988); *Zaera v. Raff (In re Raff),* 93 B.R. 41 (Bankr.S.D.N.Y.1988); *Coffman v. Coffman (In re Coffman),* 52 B.R. 667 (Bankr.D.Md.1985). *See also Corrigan v. Corrigan (In re Corrigan),* 93 B.R. 81 (Bankr.E.D.Va.1988).

■ However, as illustrated by these opinions and others under § 523(a)(5), the court must still determine the true nature of the award, and the decision to be made in the case of an equitable distribution award is essentially the same as that with any other indefinitely defined spousal obligation. Where there is an ambiguity as to the intent of a marital agreement or divorce court financial award, federal courts have relied upon a number of different elements to determine the dischargeability of a required spousal payment. *See Goins v. Rives (In re Goins),* 808 F.2d 1391, 1392–93 (10th Cir.1987); *In re Yeates,* 807 F.2d at 878; *In re Petoske,* 16 B.R. at 413–14.

■ As indicated above, Virginia's equitable distribution law on its face and as interpreted by Virginia courts authorizes what is essentially an award based on property; yet there seems to be enough flexibility in the statutory scheme for divorce courts to make awards in appropriate cases that would be actually in the nature of alimony, maintenance or support. Since the nature of the awards here must be determined by the intent of the circuit court who adopted the findings of the commissioner in chancery, substantial weight should be accorded the commissioner's rationale for the awards.

1. EQUITABLE DISTRIBUTION AWARD.

■ This court finds that Ms. Macys has not established by a preponderance of the evidence that either component of this award consisting of $26,200.00 for the debtor's pension and profit sharing plan and $86,070.00 for other property is in the nature of alimony, separate maintenance or support. Rather, based upon the divorce decree, I find that the total award represents a judgment against the debtor for the payment of property.[14]

4. The ages and physical and mental condition of the parties;
5. The circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under the provisions of § 20–91(1), (3) or (6) or § 20–95;
6. How and when specific items of such marital property were acquired;
7. The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities;
8. The present value of pension or retirement benefits, whether vested or nonvested;
9. The liquid or nonliquid character of all marital property;

10. The tax consequences to each party; and
11. Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

Va.Code Ann. § 20–107.3(E) (Cum.Supp.1985) (Factor no. 8 was deleted in Acts 1988, c. 747.) (current version at Va.Code Ann. § 20–107.3(E) (Cum.Supp.1989)).

14. Subsequent to the court's advising counsel for the parties of the rulings to be made, Ms. Macys' counsel has requested the court to at least reconsider the ruling as to the $26,200.00 portion of the award. The court had carefully considered whether a distinction could be made between the two parts of the award and found

Accepting the commissioner's findings, the circuit court made rather straight forward separate awards against the debtor for spousal and child support under Va. Code Ann. §§ 20–107.1 and 20–107.2 and for property under § 20–107.3. It may be assumed that the circuit court and the commissioner knew the difference between support and property. Although under the Virginia code there might have been an interrelationship among the three awards, nothing in the commissioner's report indicated that the equitable distribution was based on considerations of spousal and child support or vice versa.

The strongest argument to be made in favor of Ms. Macys' position that the equitable distribution constituted support is that the commissioner's report reflected elements of both support and property. Even though the factors which § 20–107.3(E) requires the court to consider are primarily directed to property considerations, traditional elements of support are included also. Perhaps of major consideration in the bankruptcy context are the needs and resources of the parties. However, these elements were considered only to a limited extent by the commissioner under the equitable distribution portion of his report. Nevertheless, evidence of need could be an indication favoring support. *In re Yeates*, 807 F.2d at 879.

Contrary to an inference of support, however, a strong overall inference of the commissioner's report is that there was no reason to supplement Ms. Macys' support award by the property award because of the parties' prior disposition of assets. Their sales of property enabled the parties to share substantial sums, and Ms. Macys had already been able to purchase a new separate residence for herself and her children. It also appears from the report that Dr. Macys' reduced earning capacity due to his heart condition persuaded the commissioner to limit the spousal support award.[15]

Since the award is unambiguous and on its face represents a payment for property, the two most recent Fourth Circuit opinions seem to be dispositive of the issue.

In *Tilley v. Jessee*, 789 F.2d at 1074, the former spouses had entered into a postnuptial agreement. The award in issue was a liability of $125,000.00 which the agreement by specific terms required the husband to pay for the wife's property interest in the husband's property and estate. In the dischargeability proceeding brought by the wife under § 523(a)(5) the bankruptcy and district courts had considered extrinsic evidence of the parties' intent under the agreement and concluded that the husband's obligation was in the nature of support and therefore nondischargeable.

The court of appeals reversed the lower courts and held the debt a dischargeable property settlement. In reaching its conclusion, the court relied to a considerable extent on the parties' agreement which had plainly labeled the obligation as a property payment, stating:

> In this instance, the agreement did more than simply label payments as alimony or property settlement. It exhibited a structured drafting that purported to deal with separate issues in totally distinct segments of the document....
>
> While the agreement could not, as we have stated, be determined on the issue, we conclude that it erected a substantial obstacle which Jessee was required to overcome. We further conclude that the additional evidence provided below was insufficient to meet that burden.

*Tilley v. Jessee*, 789 F.2d at 1077–78.

In *re Long*, 794 F.2d at 928, involved a lump sum award of alimony by a jury in the divorce suit. The court of appeals stressed that the trial court had carefully instructed the jury on the distinction between alimony and property settlement. In

---

no basis to rule that either was support. Since payment for the pension was to be made only if and when received by the debtor in the future (a doubtful premise given the depleted status of the debtor's plan account), the case is plainly distinguishable from Judge Bonney's decision in *Corrigan*, 93 B.R. at 81. In fact, it could be argued that the provision for delayed payment

gives this part of the award an even stronger quality of property settlement.

**15.** See the commissioner's responses to factor number 11 of § 20–107.3(E) and to inquiry number 3 of the decree of reference which are delineated in the facts section of this opinion.

affirming the lower court's ruling that the award labeled by the jury as alimony was indeed nondischargeable alimony, the court stated,

> we must defer to this explicitly rendered conclusion of intent by the state court jury.

*Long*, 794 F.2d at 931.

In our case, even if it be assumed that the equitable distribution award contains elements of both support and property, Ms. Macys' evidence has not overcome the circuit court's characterization of the award as a payment under Va.Code Ann. § 20–107.3 for property.

### 2. ATTORNEY FEE AWARD.

▮ The attorney fees awarded by the circuit court were not restricted to consideration of the Macys' property. I find the judgment award for a portion of Ms. Macys' attorney's fees in the amount of $5,120.85 to be in the nature of support, and this award will be excepted from discharge pursuant to § 523(a)(5). *See Amlong & Amlong P.A. v. Patrick (In re Patrick)*, 106 B.R. 743 (Bankr.S.D.Fla. 1989); *Boggess v. Boggess (In re Boggess)*, 105 B.R. 470 (Bankr.S.D.Ill.1989); *Cooley v. Sposa (In re Sposa)*, 31 B.R. 307 (Bankr. E.D.Va.1983). However, since the judgment was in favor of Ms. Macys and not her attorney, the attorney lacks standing, and his complaint must be dismissed. *See In re Sposa*, 31 B.R. at 312.

### 3. DEBTOR'S COUNTERCLAIM.

The debtor's counterclaim is a claim for offset against Ms. Macys' equitable distribution award, should the court determine it excepted from discharge. Since the court has found in debtor's favor on this issue, it is not necessary to consider the counterclaim, and for this reason it will be denied.[16]

A separate order will be entered reflecting the court's rulings.

---

**16.** If it later becomes necessary, the court may reconsider the counterclaim.